Edward S. McDonald

*v.*

The People of the State of Illinois.

*Filed at Ottawa November 16, 1888.*

1. Criminal Law—*conspiracy.—evidence to establish a conspiracy— and herein, of limiting the range of inquiry by bill of particulars.* Where the issue is whether a party is guilty of a general conspiracy, distinct overt acts of conspiracy may be given in evidence; and when the issue is whether a party is guilty of a specific overt act of conspiracy, *it is* competent to give in evidence other overt acts of conspiracy which include, or are dependent upon, or constitute a part of the *res gestæ;* but it is not admissible to give in evidence a specific overt act wholly disconnected from and independent of the acts charged, having no other relevancy to each other than that they are overt acts of the same parties.

2. In case the prosecution, by order of court, furnishes a bill of particulars showing the particular transactions relied on to support an

indictment for a conspiracy to obtain money by false and fraudulent pretenses, it will be limited to proof of the acts or transactions named in such bill of particulars, and it will be error to admit evidence of other and different transactions not inseparably connected with those named, or constituting a part of the *res gestæ.*

3. So on an indictment for a conspiracy to obtain money of a county by false pretenses, by means of fraudulent bills for work, labor and materials, the prosecution, in obedience to a rule of court, furnished the defense with a bill of particulars, relating to bills for work done and materials furnished for the Normal School. On the trial, the People offered in evidence many other bills for labor and materials for the court house, insane asylum, infirmary and hospital, which the court admitted, over the defendants' objection : *Held,* that the court erred in admitting in evidence the bills other than those relating to the Normal School.

4. In the same case, the defendants asked an instruction, which, among other things, contained the following: "The defendants are not, in this case, charged with conspiring to defraud the county by bribing county commissioners to allow exorbitant and unjust bills, neither are they upon trial for conspiracy to defraud the county in any way, in any transactions other than those relating to the repairs at the Normal School,"—which was stricken out by the court. There was no other instruction embracing this point: *Held,* there was error in the modification of the instruction.

5. SAME—*accused entitled to a fair and impartial trial.* Every person charged with crime is entitled to a fair and impartial trial in conformity to the laws of the State, and it is a duty devolving upon the courts to see that this right, conferred upon every citizen, is upheld and sustained, and not abridged or frittered away. In case of a conviction, if this court is not satisfied, from the record, that the defendant has had a fair and impartial trial, the judgment will be reversed.

6. SAME—*latitude allowed the prosecution in presenting a case to the jury—departure from a proper line of argument.* Much latitude is always allowed counsel in the opening statement or argument of a case to the jury, but there are bounds which ought not to be transcended. As a general rule, a full statement of the facts expected to be proved on the trial, with a statement of the law relied on, would seem to be sufficient.

7. In this case, the line of argument pursued by the prosecution on the trial is reviewed, and is regarded as such a departure from the usual and proper mode of presenting a case to the jury as to require the reversal of a judgment founded on a verdict of conviction.

Writ of Error to the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. Henry M. Shepard, Judge, presiding.

Mr. C. Beckwith, and Mr. W. S. Forrest, for the plaintiff in error.

Mr. George Hunt, Attorney General, Mr. Joel M. Longenecker, State's Attorney, and Messrs. Stiles & Lewis, for the People.

Mr. Chief Justice Craig delivered the opinion of the Court:

This was an indictment in the Criminal Court of Cook county, against Nicholas Schneider, William J. McGarigle, Frederick Faber and Edward S. McDonald, in which the defendants were charged with a conspiracy to obtain money from Cook county by false pretenses. The indictment contained several counts, some of which charge a conspiracy to defraud the county by means of false pretenses, generally, while others charge a conspiracy to defraud the county with respect to repairs at the Normal School. At the June term, 1887, of the Criminal Court, McGarigle and McDonald were tried, jointly, before a jury. The two other defendants, Schneider and Faber, were not put upon trial, but were used as witnesses by the People against McGarigle and McDonald. The jury found the two defendants guilty, and fixed their term of imprisonment at three years in the penitentiary. Edward S. McDonald alone sued out this writ of error.

Various errors have been assigned, and elaborate arguments have been filed in behalf both of the defendant and the People. We shall not, however, undertake to follow counsel, and consider all the questions raised, but will content ourselves with the consideration of a few questions which are decisive of the judgments rendered both in the trial and Appellate courts.

Every person charged with a crime is entitled to a fair and impartial trial,—a trial in conformity to the laws of the State, —and it is a duty resting upon the courts to see that this guaranty conferred by the laws upon every citizen, is upheld and sustained. A fair and impartial administration of the laws is one of the most sacred rights of the citizen,—one that can not be abridged or frittered away. In looking over the record before us, we are not satisfied that the defendant, Mc-Donald, had a fair and impartial trial in the Criminal Court. Improper evidence was admitted, the instructions to the jury did not lay down the law correctly, and other irregularities occurred during the trial, which doubtless led to the verdict returned by the jury. Under the last head may be mentioned the opening statement of the case to the jury made by the counsel for the People. Much latitude is always allowed counsel in the statement or argument of a case to a jury, but there are bounds which ought not to be transcended. As a general rule, a full statement of the facts expected to be proven on the trial, with a statement of the law relied upon, would seem to be sufficient; but here, the court ruled that counsel for the People might elect the manner in which to make his opening. He was allowed to talk about the "boodle prosecutions in New York City," to discuss and explain to the jury the meaning and office of an "exception" entered by counsel for defendant. Among other things, it was said "that the object of taking exceptions was to get error in the record; that everything said is taken down by the stenographers; that in case the defendants are found guilty, they have a right to take an appeal to the Supreme Court; that the whole record goes up to the Supreme Court; that if the judge has made a remark which he ought not to have made, and which, very likely, he has, *those seven wise men down at Ottawa,* if it shall appear to them that any remark was made which might have prejudiced the cause of these gentlemen who have been found guilty, will consider whether or not they will grant them a new trial; that

errors may be run all through the case." The counsel for the People also informed the jury that the law had been so changed that any defendant might testify in his own behalf. Objection being made to this statement, and overruled, counsel then said: "There is another exception. The court thinks I am right, or he would tell me to vary my line of argument." The jury were also told that the defendants had applied for a change of venue to another county, and the application for a change was commented upon at length. Other matters wholly foreign were stated and argued to the jury. Indeed, full liberty was given counsel for the People, by the court, to make any statement he saw proper to make, whether it had any legitimate bearing on the case or not. The manner in which legal proceedings are required to be conducted, under the laws, was ridiculed at great length by counsel for the People, with the sanction and approval of the court.

It is a proposition too plain to admit of argument, that the jury had nothing to do with the force or effect or the office of an exception that might be taken by counsel during the trial; nor could they take into consideration the fact, if it was a fact, that the defendants had applied for a change of venue; nor was it material for them to know that the law had been so changed that a defendant might testify in his own behalf; and it is plain that the court ought not to have permitted the attorney for the People to bring these matters before the jury in the opening statement. In *State* v. *King*, 64 Mo. 595, where the jury were told, in the argument, that if they wronged the defendant by finding him guilty, that wrong can be righted by an appeal by the defendant to the Supreme Court, the remark was held to be error. It is there said: "The statements that the higher court referred to had the power to review the finding of the jury on the weight of evidence, was calculated to induce the jury to disregard their responsibility."

Our statute, which allows a defendant in a criminal case to testify, declares, that "his neglect to testify shall not create

any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect." Under this statute, why was the attorney of the People allowed to comment, before the jury, on the right of the defendants to testify in the case?

In *State* v. *Smith*, 75 N. C. 307, a judgment wherein a defendant was convicted, was reversed upon the ground, alone, that the attorney for the People was allowed, in addressing the jury, to state that "the defendant was such a scoundrel he was compelled to move his trial from Jones county to a county where he was not known." And yet, in this case, counsel for the People was permitted to argue, at great length, upon the fact that the defendants had applied for a change of venue, and the application had been denied.

The defendants were charged with a crime which was a violation of the laws of the State. They were on trial under the laws of the State. The inquiry is a pertinent one, why the laws of the State, under which criminals are tried, were permitted to be ridiculed in the opening argument to the jury. What the object of counsel was in pursuing the course that was pursued, may be difficult to understand; but whatever may have been the object, the effect of what was done, without doubt, created a prejudice in the minds of the jury, and may have, in part, at least, led to the verdict which was rendered.

Again, in the closing argument to the jury on behalf of the People, counsel were allowed to travel outside of the record, and discuss M. C. McDonald, and his influence in the administration of justice in Chicago. Among other things, the State's attorney said: "They say there is a fabled tree, which grows in some torrid clime; that the birds of the air which fly near its branches, influenced by the aroma of it, fall beneath it and die. That is the influence of M. C. McDonald in this and all matters connected with the administration of justice." Other allusions of a similar character were made, in the argument, to the same person. He was in no manner connected

with the case, and upon objection being made, it was the duty of the court to confine the argument to a consideration of such matters as properly pertained to the case, under the evidence. *The People* v. *Mitchell*, 62 Cal. 411; *Union Central Life Ins. Co.* v. *Cheever*, 36 Ohio, 201; *Rolfe* v. *Inhabitants of Rumford*, 66 Maine, 564.

The indictment contained six counts, but the State's attorney dismissed the fifth count out of the case. The first four counts charged the defendants, in general terms, with a conspiracy to defraud Cook county by means of false pretenses. The last count charged a conspiracy to defraud Cook county by means of false pretenses as to work done and materials furnished at the Normal School, in 1886. Before the cause was called for trial, the defendant filed a motion in writing, requesting the court to enter an order requiring the State's attorney to file a bill of particulars. After due consideration the court granted the order, and in response thereto, the State's attorney filed what is known in the record as the original bill of particulars. The bill of particulars thus filed did not, however, prove to be satisfactory to the defendant. It was but little more definite or specific, as to the character of the charge, than the indictment. The defendant then filed a petition for a further and better bill of particulars, which, upon due consideration, the court granted, and entered an order requiring the State's attorney to furnish defendant, McDonald, a further and better bill of particulars. In the order, the State's attorney was required "to furnish the defendant, McDonald, the date and number of all bills, vouchers or warrants which are relied upon by the People, and which have been on file in any county office, and which have been in the possession of the State's attorney; and also that the said People permit the inspection of the said bills, vouchers and warrants by the attorneys for said Edward S. McDonald, or some of such attorneys; also, that said People furnish the defendant, Edward S. McDonald, the dates between which the work or labor done or pretended to be

done, was done or pretended to be done; also, that the State's attorney permit the defendant, McDonald, and his counsel, to examine and inspect any books which the State's attorney claims were kept in pursuance of the conspiracy charged in the indictment."

The amended bill of particulars furnished McDonald is as follows: ·

"1. The dates between which the labor was done or pretended to have been done, and the material furnished or pretended to have been furnished, by said Nicholas Schneider, as set forth in the bill of particulars heretofore furnished said defendants, McGarigle and Edward S. McDonald, are January 1, 1886, until January 1, 1887.

"2. The dates and numbers of bills that are relied upon, are No. 7, August 2, 1886; No. 9, August 9, 1886; No. 12, August 16, 1886; No. 13, September 4, 1886; No. 15, September 13, 1886; No. 18, September 20, 1886; No. 23, October 2, 1886; No. 26, October 9, 1886; No. 27, October 16, 1886; No. 31, November 1, 1886; No. 36, November 8, 1886; No. 40, November 20, 1886.

JULIUS S. GRINNELL, *State's Att'y.*"

The order of the court under which the last bill of particulars was furnished, is plain, and can not be misunderstood. The dates and numbers of all fraudulent bills, vouchers or warrants relied upon by the People to secure a conviction, by the order were to be furnished by the State's attorney to the defendant. The order of the court was obeyed, and a list of the fraudulent bills which were to be relied upon on the trial to secure a conviction, was submitted to the defendant. The bills relied upon were twelve in number, the first bearing date August 2, 1886, and the last, November 20, of the same year. They all related to services performed and materials furnished at the Normal School. Under the bill of particulars which had been furnished, it was contended, on the trial, by the defendant, that

the evidence should be confined to the Normal School trans-
actions; but this position was overruled by the court, and the
People were allowed to introduce evidence of fraudulent bills for
services rendered and materials furnished at the court house,
insane asylum, infirmary and the hospital.   Some twenty-nine
of Schneider's bills, relating solely to these places, were in-
troduced in evidence to establish the charge of conspiracy to
defraud Cook county in rendering fraudulent bills for services
rendered and materials furnished at the Normal School, as
stated in the bill of particulars.

The ruling of the court on the admission of this evidence
presents a question of importance, and one, too, not entirely
free from difficulty.   Where the charge in the indictment is a
general one, as is usually the case in an indictment of this
character, it is a matter of great importance to a defendant to
obtain a bill of particulars, in order that he may know, spe-
cifically, what he will be required to meet on the trial.   If,
however, after a bill of particulars has been furnished, the
evidence to establish a conviction is not confined to the speci-
fications therein, what benefit is to be derived from a bill of par-
ticulars?   Where is the necessity for an order of court requiring
a bill of particulars?   *Commonwealth* v. *Snelling*, 15 Pick. 326,
is an interesting case on the subject.   The defendant was in-
dicted for a libel on the character of one Benjamin Whitman,
a justice of the police court, charging him, in various forms,
but in general terms, with misconduct and malpractice in the
discharge of the duties of his office.   Prior to the coming on
of the trial, the defendant was required by the court to state
whether he intended to offer proof of the truth of the miscon-
duct charged in the publications alleged to be libelous, and if
so, to file specifications of the cases and instances of miscon-
duct intended to be given in evidence, and on the trial the
defendant was prohibited from giving evidence of the truth of
the supposed libel, except according to the specifications so
filed.   The order of the trial court was fully sustained, and

upon one branch of the question the court said: "And in regard to another exception, namely, that the defendant having, in his bill of particulars, specified certain cases, and added the words, 'and others,' was prohibited from going into evidence of cases not otherwise specified. All the reasons which require a specification, require that the defendant should be confined to the cases specified, otherwise the purpose of the order would be wholly defeated."

In *The People* v. *McKinney*, 10 Mich. 54, which was an indictment for embezzlement, in speaking of the office of a bill of particulars, the court said: "The particulars called for, if furnished, would not have constituted strictly a part of the information, nor any part of the record proper. It would not have constituted the charges upon which the defendant was to be tried, as the defendants seem to suppose. Its only purpose and effect are to inform the defendant of the nature of the evidence and the particular transactions to be proved under the information, and to limit the evidence to the items and transactions stated in the particulars."

*Regina* v. *Esdaile et al.* 1 F. & F. 213, was an information for conspiracy. Prior to the trial, bills of particulars having been delivered under an order of court, and evidence of transactions not named therein having been offered and rejected, the court held, "that particulars having been ordered of overt acts, the counsel for the Crown were confined within them." See, also, *Commonwealth* v. *Davis*, 11 Pick. 434.

A leading case on the question is *Commonwealth* v. *Giles*, 1 Gray, 468. The defendant was indicted as a common seller of spirituous and intoxicating liquors. Before the trial, defendant, upon his motion, had been furnished, by order of the court, with a list specifying the names of the persons to whom sales would be proved. At the trial, the district attorney offered evidence of other sales to persons not named in the specification. The evidence was admitted against the objection of the defendant. The Supreme Court, in passing upon this

question, said: "It is now a general rule, perfectly well established, that in all legal proceedings, civil and criminal, bills of particulars, or specifications of facts, may and will be ordered by the court whenever it is satisfied that there is danger that otherwise a party may be deprived of his rights, or that justice can not be done." The court then discusses the question whether the order of court granting a bill of particulars is final, inclining to the view that it is. The court then said: "But whether this be so or not, when it is once made, it concludes the rights of all parties who are to be affected by it; and he who has furnished a bill of particulars under it, must be confined to the particulars he has specified, as closely and effectually as if they constituted essential allegations in a special declaration."

".The evidence, therefore, of sales not mentioned in the list which was furnished to the defendant in the present case, was inadmissible, and should have been rejected. The particular purpose for which it was allowed to be adduced, scarcely, if at all, limiting or diminishing its general force and effect, constituted no exception to the general rule, and afforded no sufficient or legal reason for disregarding it."

The court of last resort in New York, in *Starkweather* v. *Kettle,* 17 Wend. 21, in speaking of a bill of particulars, said: "The declaration, plea, or notice of set-off, may be so general in its terms that the opposite party will not be fully apprised of the demand which will be set up on the trial, and he is therefore permitted to call on his adversary to give a more detailed and particular statement of the claims on which he intends to rely. When the bill is furnished, it is deemed a part of the declaration, plea or notice to which it relates, and is construed in the same way as though it had originally been incorporated in it."

It will be observed that in the last case cited, the court treats a bill of particulars, when furnished, as a part of the declaration, plea or notice to which it relates, while in the *Giles case*

it is said, he who furnishes a bill of particulars must be confined to the particulars as closely as if they constituted essential allegations in a special declaration, and the evidence was confined strictly to the bill of particulars. It will also be observed, that in the case of *The People* v. *McKinney, supra,* the court seems to take a slightly different view of the office of a bill of particulars, and says it does not constitute a part of the record, but its office is to inform the defendant of the nature of the evidence, and the particular transactions to be proved. These different expressions in the authorities are more formal than otherwise. The object of a bill of particulars is to give the accused notice of the specific charge he is required to meet on the trial, so that he may be prepared to defend. Here, the State's attorney, had he seen proper, might have given notice, in the bill of particulars, that fraudulent bills for labor and materials had been presented by Schneider, relating to the court house, insane asylum, infirmary and the hospital, specifying the date and amount in each case. Then the evidence relating to the bills at these various institutions might have been properly admitted; but he saw proper to limit the charge to twelve specific bills for labor and materials on the Normal School. Having done this, under the plainest principles of law relating to the admission of evidence under an averment in a pleading,—treating the bill of particulars as a pleading,—the evidence ought to have been confined to the twelve bills specified in the bill of particulars, otherwise the bill of particulars was a delusion—a legal snare—furnished for the purpose of deceiving the defendants. It is not claimed that the act of presenting Normal School bills was connected with the presentation of the other bills in such a manner that they were, on that account, inseparable; nor was such the case. The bills of the different county institutions, and fraudulent pretenses relating thereto, had no immediate or direct connection with each other. In order to establish a conspiracy on

11—126 Ill.

the part of the defendants in regard to the work and materials on the Normal School, it was not necessary to prove that Schneider had presented fraudulent bills as to work and materials furnished at the court house, insane asylum, infirmary and hospital, and it was erroneous to allow such evidence to go to the jury. The effect of the bill of particulars furnished by the State's attorney under the order of the court, was to narrow the issue to the fraudulent bills relating to the Normal School, and, as a necessary consequence, exclude all evidence of a conspiracy to obtain money from Cook county, except as to the bills for labor and materials furnished on the Normal School.

We are not unmindful that it is competent, when the issue is whether a party is guilty of a general conspiracy, distinct overt acts of conspiracy may be given in evidence, and that when the issue is whether a party is guilty of a specific overt act of conspiracy, it is competent to give in evidence other overt acts of conspiracy which include or are dependent upon or constitute a part of the *res gestæ* of that act; but it has never been held admissible to give in evidence to prove a specified overt act, wholly disconnected and independent overt acts having no other relevancy to each other than that they are overt acts of the same parties.

What was said in the case of *Ochs et al.* v. *The People*, 124 Ill. 399, in regard to the admission of evidence, has no application to the facts of this case. There, the defendants were charged with a conspiracy to obtain money from Cook county by means of false pretenses. The indictment contained five counts, but the State's attorney elected to proceed under the first four counts of the indictment, which were, in substance, as follows: The first charges that the defendants and others, on November 1, 1885, etc., feloniously conspired together, with the fraudulent and malicious intent then and there feloniously, wrongfully and wickedly, by divers false pretenses, and with indirect means, to cheat and defraud said county of Cook of its

moneys, etc. The second count charges a conspiracy to obtain the moneys and property of Cook county by false pretenses, and to cheat and defraud the county, and that in pursuance of the conspiracy they did obtain large amounts of goods, moneys, etc., of the value of $100,000, of the county, by false pretenses. The third and fourth counts charge a conspiracy between the parties to obtain from the county, by false pretenses, divers large sums of money, of the value of $100,000. It will be observed that the charges in the indictment are of a general character. What particular pretenses were resorted to is not charged. Under such charges in an indictment, the evidence, as it did on the trial of the cause, might take a wide range; but in the case under consideration, the charge, as heretofore shown, having been limited, what may have been said in the *Ochs case* in reference to the admission of evidence can have no bearing here.

In the fifteenth instruction for the prosecution, the jury were told "that any evidence which has been admitted by the court in the presence of the jury is for the consideration of the jury, and should be considered by them in making up their verdict." In quite a number of the instructions given at the instance of the People, the jury were instructed that they should find the defendants guilty, if they believed, from the evidence, beyond a reasonable doubt, that they were guilty "as charged in the indictment." These instructions wholly ignored any restrictions placed upon the general charge contained in the indictment by the bill of particulars which was furnished the defendants, and by these instructions, thus wholly unqualified, the jury were left at perfect liberty to find the defendants guilty of a conspiracy to obtain money by false pretenses, by means of either false and fraudulent court house bills, hospital bills, asylum bills, infirmary bills or Normal School bills.

Twenty instructions were given by the court on behalf of the People. In no one of these instructions was the jury directed to acquit the defendants unless they found them guilty

of the Normal School conspiracy,—the conspiracy for which they were placed upon trial. In order to meet this difficulty, and place that question in a proper light before the jury, the defendants' counsel prepared instruction No. 2, which, among other things, contained the following : "The defendants are not, in this case, charged with conspiring to defraud the county by bribing county commissioners to allow exorbitant and unjust bills. Neither are they upon trial for conspiracy to defraud the county in any way, in any transactions other than those relating to the repairs at the Normal School, undertaken by Nicholas Schneider." This part of the instruction was stricken out by the court, and, as modified, the instruction was then given to the jury. As that part of the instruction stricken out by the court was not embraced in any other instruction, we think the modification was erroneous. Under the bill of particulars furnished by the People, the only conspiracy involved on the trial, related to the materials furnished and repairs done by Schneider at the Normal School, and the defendants had the right to have the jury so instructed. As has been said before, much evidence in regard to fraudulent transactions had been introduced, relating solely to labor and materials at the court house, insane asylum, infirmary and hospital. This evidence being before the jury, they were as likely to convict the defendants of a conspiracy in regard to repairs at one of those institutions as they were in regard to the repairs at the Normal School, unless they were instructed by the court that the defendants were not on trial for conspiracy to defraud Cook county in any transactions other than those relating to the Normal School. How could the jury know upon which one of the five transactions relating to the five county institutions they were authorized to return a verdict, unless directed by the court in the instructions? It is apparent the jury were left entirely in the dark upon this question, and for aught that appears, the jury may have been

satisfied that no conspiracy was established in regard to the repairs for which bills were rendered in reference to the Normal School, and yet found the defendants guilty as to some one of the other institutions,—an offense for which they were not on trial.

The manner in which the case was submitted to the jury by the instructions, leaves it impossible to determine whether the defendant was convicted of the offense upon which he was put upon trial, or for some other or different offense. We are not prepared to hold that a conviction of this character can be sustained. The modification of the instruction was, in our judgment, erroneous, and that, too, in a vital point in the case.

It is claimed that other irregularities and errors occurred on the trial, which led to the conviction of the defendant, but it will serve no useful purpose to consider them here.

We are satisfied that the defendant was not tried in conformity to law, and for the errors indicated, the judgments of the Appellate and Criminal Courts will be reversed, and the cause remanded for another trial.

*Judgment reversed.*

Mr. Justice Magruder: I do not concur in this decision. Not having time to prepare a dissenting opinion I refer to the opinion of Mr. Justice Moran of the Appellate Court (25 Appellate Ct. Rep. 350,) as expressing the views of the case, which seem to me to be correct.

Mr. Justice Bailey having passed upon this case in the Appellate Court, took no part in its consideration here.