### James O'Leary v. The People of the State of Illinois.

1. BILL OF PARTICULARS—*Party Furnishing Must Be Bound by It.*— Where a trial court determines that a bill of particulars shall be furnished it concludes the rights of all parties who are to be affected by it; and he who has furnished a bill of particulars under it, must be confined to the particulars he has specified as closely and effectually as if this constitutes essential allegations in a special declaration.

2. SAME—*Effect of Stipulation that One Count Shall Stand as a Bill of Particulars to Another.*—The effect of a stipulation that the second count shall stand as a bill of particulars to the first count is practically to eliminate the first count and leave the case to stand on the second.

3. SAME—*Amplification of the Pleadings.*—A bill of particulars is an amplification, or more particular specification of the matter set forth in the pleading. The declaration, plea, or notice of set-off may be so general in its terms that the opposite party will not be fully apprised of the demands which will be set up on the trial, and he is therefore permitted to call on his adversary to give a more detailed and particular statement of the claims on which he intends to rely.

4. SAME—*A Part of the Declaration, etc.—Construction.*—When the bill is furnished it is deemed a part of the declaration, plea or notice to which it relates, and is construed in the same way as though it had originally been incorporated in it.

5. VARIANCE—*Between Proof and a Local Description.*—Any variance between the proof and the description of a gambling place is fatal.

6. INSTRUCTIONS—*Ignoring Charge in the Indictment.*—An instruction authorizing the jury to find the defendant guilty, if they believe

O'Leary v. The People.

beyond reasonable doubt that there was a betting booth under a roof, which booth was used for receiving or making bets on a horse race, and that the defendant assisted at such booth in making or receiving bets, and wholly ignores the charge in the indictment that he kept a common gaming house in a certain building known as "Washington Park Club," and the charge that *in said building* he permitted persons to play, etc., is erroneous.

Mr. Justice Sears dissenting.

1. Bill of Particulars—*Requisites of.*—It is not required that a bill of particulars do more than inform the accused of the nature of the offense in such a manner as to fairly enable him to prepare to defend.

2. Instructions—*Not Prejudicial to Defendant.*—An instruction which authorized the jury to find the defendant guilty, if they believe beyond a reasonable doubt that there was a betting booth under a roof, ignoring the charge in the indictment that he kept a common gaming house in a certain building known as the "Washington Park Club," is not prejudicial to the defendant in this case, as no attempt was made to prove an offense at any other place.

3. Same—*Singling Out Specific Item of Evidence.*—An instruction which singles out a specific item of evidence and undertakes to tell the jury what it does not establish, is erroneous.

Indictment, for keeping a gaming house. Error to the Criminal Court of Cook County; the Hon. Joseph E. Gary, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded, Mr. Justice Sears dissenting. Opinion filed March 12, 1900.

Edward H. Morris, attorney for plaintiff in error.

The effect of the bill of particulars, when furnished, is to narrow the general claims made in the pleading down to the specific claims set out in particular. It limits the claims for which a recovery may be had, but it is in no manner a limitation or specification of the evidence which plaintiff may introduce to prove the claims thus detailed and limited. McDonald v. People, 25 Ill. App. 360, 361.

The bill of particulars limits the claims for which recovery may be had to those specifically set forth therein. Casey v. Vandenventer, 76 Ill. App. 628; McDonald v. People, 126 Ill. 150; Hess Co. v. Dawson et al., 149 Ill. 145.

Under the indictment the State was required to prove, beyond a reasonable doubt, not only that the defendant below kept a common gaming house, but also that it was in a building known as "Washington Park Club," and the

instructions given at the instance of the People should have so limited the right of the State to a verdict of guilty.

In an indictment for keeping a common gaming house it is sufficient to charge the keeping generally, in the county, without setting forth the number and location of the building; but if the place is described as a certain name, number, or situated in a certain ward, etc., this must be proved strictly as laid, because it is descriptive of the offense charged, serving to identify it. State v. Crogan, 8 Iowa, 523; People v. Slater, 5 Hill (N. Y.), 401; Com. v. Butts, 2 Va. Cas. 18; Withers v. State, 21 Tex. App. 120; Stiff v. State, 21 Tex. App. 255; Moore v. State, 12 Ohio Stat. 387.

Where the prosecutor states the offense with greater particularity than he is bound to do, the proof must correspond; nothing connected with the offense can be disregarded. United States v. Brown, 3 McLean, 233; United States v. Darton, 6 McLean, 46.

Although a crime is susceptible of commission in more than one way, it must be proved to have been committed in the particular way charged, and in no other way. Kennedy v. State, 9 Tex. App. 399; Com. v. Luscomb, 130 Mass. 42; Limouze v. People, 58 Ill. App. 314; Tucker v. People, 117 Ill. 88; Davis v. People, 19 Ill. 77.

Charles S. Deneen, State's Attorney, and Albert C. Barnes, Assistant State's Attorney, for defendant in error.

Where the merits of the case have been fairly ascertained and determined, the court will not interfere, unless it satisfactorily appears that some settled principle of the criminal law or rule of proceeding has been clearly violated. Clark v. People, 31 Ill. 482; Wilson v. People, 94 Ill. 327; Ritzman v. People, 110 Ill. 362; Zimm v. People, 111 Ill. 49; Burk v. People, 148 Ill. 70; Gore v. People, 162 Ill. 266.

Mr. Justice Adams delivered the opinion of the court.

Plaintiff in error was convicted of keeping a common gaming house and sentenced to pay a fine of $500. The

O'Leary v. The People.

indictment consists of two counts. The first count charges generally that July 1, 1898, in the county of Cook, O'Leary unlawfully kept a common gaming house. The second count charges that James O'Leary on July 1, 1898, in Cook county, Illinois, "unlawfully did then and there keep a common gaming house in a certain building by him then and there used and occupied, the said building being situate at and known as Washington Park Club, in the city of Chicago, in said county of Cook; and in said gaming house in said building so used and occupied by the said James O'Leary, did permit certain persons, whose names are to the said grand jurors unknown, to frequent and to come together to play for money at the game of selling pools, and the game of bookmaking; and did then; and there keep, and suffer to be kept, certain tables and other apparatus, for the purpose of playing for money at the game of selling pools and the game of bookmaking, contrary to the statute," etc.

It was stipulated in open court between the People and O'Leary, the defendant, that the second count should stand as a bill of particulars to the first count. The first question is as to the effect of this stipulation.

In Commonwealth v. Giles, 1 Gray, 466, the defendant was indicted for unlawfully selling intoxicating liquors. Before the trial he was furnished with a bill of particulars specifying the names of persons to whom sales would be proved. Evidence of sales to other persons not named in the bill of particulars was admitted over the defendant's objection. This was held error. The court, after saying that they were inclined to the view that the determination of the trial court that a bill of particulars should be furnished was final and not reviewable, say :

"But whether this be so or not, when it is once made, it concludes the rights of all parties who are to be affected by it; and he who has furnished a bill of particulars under it must be confined to the particulars he has specified as closely and effectually as if this constituted essential allegations in a special declaration." Ib. 469.

In Starkweather v. Kittle, 17 Wend. 21, the court, Bronson, Justice, delivering the opinion, say:

"A bill of particulars is an amplification, or more particular specification of the matter set forth in the pleading. The declaration, plea, or notice of set-off may be so general in its terms that the opposite party will not be fully apprised of the demand which will be set up on the trial, and he is therefore permitted to call on his adversary to give a more detailed and particular statement of the claims on which he intends to rely. When the bill is furnished it is deemed a part of the declaration, plea, or notice to which it relates, and is construed in the same way as though it had originally been incorporated in it."

The foregoing cases are cited with approval in McDonald v. The People, 126 Ill. 150, and the court say of Commonwealth v. Giles, *supra*, that it is "a leading case on the question." In McDonald v. The People, "the first four counts charged the defendants, in general terms, with a conspiracy to defraud Cook county by means of false pretenses. The last count charged a conspiracy to defraud Cook county by means of false pretenses, as to work done and material furnished at the Normal School in 1886." The defendants, by order of the court, were furnished with a bill of particulars, which consisted of twelve bills for labor due and materials furnished for the Normal School. The prosecution, the defendants objecting, were permitted to introduce evidence of fraudulent bills for services rendered and materials furnished for the court house, insane asylum, infirmary and hospital. For this error the judgment was reversed. The court say, among other things:

"The object of a bill of particulars is to give the accused notice of the specific charge he is required to meet on the trial, so that he may be prepared to defend. Here, the State's attorney, had he seen proper, might have given notice, in the bill of particulars, that fraudulent bills for labor and materials had been presented by Schneider, relating to the court house, insane asylum, infirmary and the hospital, specifying the date and amount in each case. Then the evidence relating to the bills at these various institutions might have been properly admitted; but he saw

O'Leary v. The People.

proper to limit the charge to twelve specific bills for labor and materials on the Normal School. Having done this, under the plainest principles of law relating to the admission of evidence under an averment in a pleading—treating the bill of particulars as a pleading—the evidence ought to have been confined to the twelve bills specified in the bill of particulars, otherwise the bill of particulars was a delusion—a legal snare—furnished for the purpose of deceiving the defendants."

In view of the law as announced in the cases cited, the effect of the agreement that the second count should stand as a bill of particulars to the first count, is the same, in legal contemplation, as if the second count were incorporated in the first. Practically the effect is to eliminate the first count and leave the case to stand on the second. This is the view of counsel for plaintiff in error, and it is not combated, but apparently acceded to by counsel for the People.

Counsel for plaintiff in error contends that under the second count it was incumbent on the State to prove that O'Leary kept a common gaming house in a building known as the "Washington Park Club," and that it was not so proved. It is expressly averred in the count that O'Leary "unlawfully did then and there keep a common gaming house in a certain building by him then and there used and occupied, the said building being situate at and known as Washington Park Club, * * * and in said gaming house in said building, so used and occupied by the said James O'Leary, did permit certain persons," etc.

The place where the gaming house is alleged to have been kept, viz., in a building known as the Washington Park Club, is stated as matter of local description, and must be proved as stated. Any variance between the proof and the description is fatal. 3 Greenl. on Ev., 13th Ed., Sec. 12; Wharton's Crim. Ev., 9th Ed., Secs. 109 and 146; Roscoe on Crim. Ev., Secs. 90–91; Moore's Crim. Law, Sec. 214; State v. Crogan, 8 Ia. 523; O'Brien v. The State, 10 Tex. App. 544; Withers v. The State, 21 Tex. App. 210; Stiff v. The State, Ib. 255; Chapman v. The People, 39 Mich. 357; People v. Slater, 5 Hill, 401.

It is not contended by counsel for the People that it was not incumbent on the State to prove the descriptive matter in question. Their claim is that it is proven. They say, " The question as to the name was asked of only the first witness, Frank McMahon," and they claim that it was proved by McMahon that the offense charged was committed in the building known as " Washington Park Club."

McMahon, in his examination in chief, testified that June 25 and July 19, 1878, he was at Washington Park in the city of Chicago; that he went there to gather evidence against bookmakers; that he knew a building there " known as the building of the Washington Park Club;" that the ground where said building is situated is all in one inclosure; that the large building is what is known as the Washinton Park Club; that the betting ring is near the main entrance to the park, to the right of the large building, underneath the grand stand, and facing the race-course; that on each side of the betting ring there are betting booths or boxes built for three men, a card-writer, a sheet-writer and a cashier, to sit in, with a block in front of the booth on which two men can stand; that June 25, 1898, he saw O'Leary in the betting ring at the Washington Park Club, standing on a block alongside of John Cella; that the parties inside the booth were James Ledwell, cashier, brother-in-law of James O'Leary, James Finnerty and another man, whom he, witness, did not know, handing out tickets; that the name of the booth was the " Star Club;" that the odds on the board were two to one; that he, the witness, wanted odds three to one, and that O'Leary said to Cella, with whom the witness had offered to bet, " I know Mac, he is all right, give him three to one," and that Cella handed the ticket to him. This witness further testified that one Charles Wood also made a bet with O'Leary in the same book, on the same day, at the " Star Club" booth; also, that July 19, 1898, he saw O'Leary standing at the same place with Cella, and that when a gentleman came up to make a bet, Cella would say, " Will I take this, Jim ? " and he would say, " No, I have got enough on that horse." He was handling the cash as well.

On cross-examination this witness testified that the buildings are all in one large inclosure known as the "Washington Park Race Track;" that there is an open space between the grand stand, under which the betting booths were, and the club house, called a paddock, where the horses are prepared for the races; that there is no connection between the grand stand and the club house, but that the latter is within the inclosure.

Counsel for the People suggest that the witness in sometimes using the name Washington Park Club, and at other times the Washington Park Club House, or Club House, refers to different buildings, but we think it clear from his evidence that he refers to the same building by these different names.

The evidence of McMahon therefore is, that, conceding O'Leary was engaged in bookmaking on the races, he was so engaged at the "Star Club" booth, between which and the building known as "Washington Park" there was an open space, and that there was nothing connecting that building with the "Star Club" booth. Counsel for defendant in error refer also to the testimony of the witness Scott. The testimony is as follows:

Q. "Did you see the defendant here at the Washington Park Club, in the betting ring, on June 25, 1898?"
A. "Yes, sir."
Q. "Whereabouts did you see him?"
A. "He was on one of the blocks there."

This evidence can not help the People, because their own witness, McMahon, testified (and his testimony is uncontradicted) that the blocks were by the booths, and that the booths were under the grand stand and separated from the "Washington Park Club" building by an open space.

The court gave to the jury, by request of the attorney for the People, the following instruction:

"The court instructs the jury that the betting on a horse race is in law a game, and that if you believe from the evidence beyond a reasonable doubt that there was what is known as a betting ring on the grounds of the Washington Park Club, in a building or underneath a roof at the time

alleged in the indictment, and that there was a betting booth therein occupied, and that such booth was used for the purpose of receiving or making bets upon a horse race, and that the defendant in any way assisted in the making or receiving of such bets at such booth in such building, then you should find the defendant guilty."

This instruction authorized the jury to find the defendant guilty, if they believed beyond reasonable doubt that there was a betting booth under a roof, which booth was used for receiving or making bets on a horse race, and that the defendant assisted at such booth in making or receiving bets. It wholly ignores the charge in the indictment that O'Leary kept a common gaming house in a certain building known as "Washington Park Club," and the charge that in said building he permitted persons to play, etc. The instruction is erroneous and should not have been given.

The judgment will be reversed and the cause remanded.

Mr. Presiding Justice Sears.

I can not concur in the conclusion reached by a majority of the court.

It is not questioned but that the first count of the indictment is good and would be sufficient to sustain the conviction, if it were not that the second count had been taken at the trial to serve as a bill of particulars.

The second count lays the place as at Washington Park Club and in a building situate at, and known as Washington Park Club. The evidence, as I view it, establishes, and without material conflict, that the entire property within the inclosure at the Washington Park racing grounds is known as Washington Park Club, and that the offense charged was committed, if at all, in a building within that inclosure.

The witness, McMahon, testified, "I saw him on June 25, 1898, in the betting ring at the Washington Park Club," and then proceeded to describe acts done by plaintiff in error then and there.

The witness Wood testified:

"On June 25, 1898, I was gathering evidence, etc., at Washington Park. * * * Saw the defendant" etc.

The witness Erickson testified :

" On June 25, 1898,  *  *  *  I went to Washington Park to gather evidence," etc.

Scott testified :

" On that day I saw the defendant in the betting ring at Washington Park."

Cella, a witness for the defendant, testified, " I was making books at Washington Park," at the time in question.

Nosmuth, a witness for defendant, testified :

" I was there during the whole meeting of the Washington Park Club."

Certain separate buildings within the inclosure are shown to be known by specific names; one as Washington Park Club House, and another as the grand stand building; but it remains undisputed that the entire inclosure is designated by witnesses as the Washington Park Club. It seems to me apparent from the evidence quoted that the entire property is the property of the Washington Park Club, that it is all known as Washington Park Club, and that the organization owns a building therein which is within the grounds of the club and which is known as the club house. The offense is not laid in the indictment as in the Washington Park Club House, and it is not proved as in that house, but in a betting ring within the club grounds.

To hold that because there was a special building known as " Washington Park Club House " within the inclosure, also known as Washington Park Club, that therefore the bill of particulars required proof that the offense was committed within the special building, and that it is not enough to prove that it was committed within the general inclosure, seems to me very much like permitting a technicality without substantial merit to defeat the ends of justice.

It is not required that a bill of particulars do more than inform the accused of the nature of the offense in such a manner as to fairly enable him to prepare to defend.

Porter v. Horton, 80 Ill. App. 333, in which case this court held, quoting the language of a respectable authority, " that the bill of particulars must not be made the instru-

ment of that injustice which it is intended to prevent," and that a bill of particulars has served its purpose if from it the litigants are apprised of that which they will have to meet.

It was not sought to prove any offense elsewhere than at the grounds of the Washington Park Club. The bill of particulars fairly informed the accused of that which was established by the evidence.

I regard the evidence, though conflicting, as sufficient to sustain the conviction. The photograph of the defendant might properly go very far to convince a jury that he was present when photographed, in spite of many oaths to the contrary.

The fourth and other instructions complained of could not have prejudiced defendant, for no attempt was made to prove an offense at any other place. The second instruction tendered by defendant was properly refused, for it singled out a specific item of evidence and undertook to tell the jury what it did not establish.

In my opinion the judgment should be affirmed.