Cooke v. The People.

## John A. Cooke v. The People of the State of Illinois.

### Gen. No. 13,250.

1.  BILL OF PARTICULARS—*propriety of reading, to jury.* A state's attorney may properly in his opening argument read to the jury the bill of particulars filed in a criminal prosecution.

2.  BILL OF PARTICULARS—*propriety of permitting jury to take, upon retirement.* In a criminal case, upon request of the jury, the court may permit the jury to have the bill of particulars during their deliberations.

3.  BOOKS OF ACCOUNT—*when testimony of persons making entries not essential to competency.* Entries contained in the books of account of a bank may be competent without the production of the persons who actually made the entries where the production of such persons is practically impossible.

4.  EVIDENCE—*when erroneous admission of, not ground for reversal.* Where a fact has been clearly established by competent unimpeachable evidence, the admission of incompetent, cumulative evidence is harmless and not ground for reversal.

5.  INDICTMENT—*function of allegation of "persons unknown."* An allegation in an indictment that the defendant conspired with "persons unknown," is material, but before a fatal variance arises it must appear that the knowledge as to who the co-conspirators were existed with the grand jury at the time of the return of the indictment.

6.  CONSPIRACY—*what evidence competent in support of charge of.* The conspiracy being established, everything written or done by either of the conspirators in execution or furtherance of the common purpose is deemed to have been done, said or written by every one of them and may be proved against each.

7.  CONSPIRACY—*what does not constitute separate combination.* The entry into a conspiratous combination of a new participant, the former participants continuing therein, does not create a new combination.

8.  CONSPIRACY—*what does not preclude conviction for.* A conviction for a conspiracy will be sustained notwithstanding the proof showed the doing of acts which constituted the commission of a felony.

9.  JUROR—*what does not disqualify.* The fact that a juror has a slight opinion based upon what he has read in the newspapers, does not disqualify him where he states that he can decide the case on the law and evidence alone.

Criminal prosecution for conspiracy.    Error to the Criminal Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding.

Heard in the Branch Appellate Court at the October term, 1906.
Affirmed.  Opinion filed May 14, 1907.

**Statement by the Court.**  This is an appeal from the Criminal Court of Cook county.  Plaintiff in error, hereinafter referred to as the defendant, was indicted at the April term, 1906, of the Criminal Court charged with conspiring "with one Charles H. Bradley and with divers other persons whose names are to the said grand jurors unknown" to obtain money from Cook county by false pretenses, contrary to the statute and contrary to the common law.  Motions made in his behalf to quash each count of the indictment were overruled, and having pleaded not guilty he was tried at the July term, 1906, of that court.  A jury found him guilty as charged in the indictment, and fixed his punishment at imprisonment in the penitentiary and a fine of $2,000.  Motions for a new trial and in arrest of judgment were overruled and August 15, 1906, he was duly sentenced to the penitentiary until discharged as authorized by law and to pay the fine imposed by the verdict.  From that judgment of the Criminal Court he prosecutes this writ of error, which was sued out October 3, 1906.

There is evidence substantially undisputed tending to show that the defendant in error, John A. Cooke, was elected clerk of the Circuit Court of Cook county, Illinois, November 3, 1896, and on December 7th of that year he duly qualified as such clerk and entered upon his duties and continued to act as clerk of that court until December 5, 1904—a period of eight years, having been re-elected in the year 1900.

Charles H. Bradley, who was one of the co-conspirators named in the indictment and one of the principal witnesses for the state, had been appointed chief clerk of the Circuit Court of Cook county in the year 1884 and he continued to occupy that position up to the year 1896, when Cooke re-appointed him chief clerk, and Bradley continued as such chief clerk until June 30, 1904, after which time he held the position of deputy.

clerk throughout the remainder of Cooke's term. John E. Seinwerth,. also a witness for the state, had been for many years prior to July 1, 1904, a deputy clerk in the office of the clerk of the Circuit Court, and on that date he succeeded Bradley as chief clerk, a position he continued to hold until the expiration of Cooke's term—December 5, 1904.

Charles H. Bradley testified that shortly after defendant assumed the duties of clerk of the Circuit Court, some time in the early part of the year 1897, he had a conversation with him, in which Cooke said: "I understand that this office is worth from $10,000 to $15,000 a year, and I do not think I am getting as much out of the office as I think I ought to have." Bradley replied: "Whoever gave you that information did not know what they were talking about. I will try to get what I can for you out of the office, but you cannot expect me to do anything that will be liable to get us into trouble." The annual salary of the clerk of the Circuit Court during both of Cooke's terms was $5,000. In the latter part of the year 1898, Bradley had another conversation with Cooke in which they talked over the question of putting extra clerks on the pay roll, and Bradley asked Cooke to furnish him with a list of names. Cooke answered, "Oh! use any names," and Bradley then asked Cooke if these persons would do any work in the office and Cooke said "No." Bradley then said that he thought the men ought to be put to work, so that if any question came up they could produce the men, but Cooke said that he was willing to takes his chances. A list was then made up containing fourteen names which Bradley got out of the city directory. This list, containing the names of fourteen fictitious persons, or at least persons who were not employed in the office of the clerk of the Circuit Court, and who performed no services there, and were entitled to no compensation from Cook county, was copied by Bradley onto the November, 1898, pay roll of the clerk of the Circuit Court, and appears on a

salary receipt book of the year 1898, introduced in evidence, as follows:

"RECEIPT BOOK.

Received the amount set
opposite our names
Date of Receipt.

| Amount. | Salary For. | |
|---|---|---|
| $104.00 | G. Anderson. | |
| 104.00 | Phillip Sorber. | |
| 104.00 | Albert Windheim. | |
| 104.00 | E. M. Felcher. | |
| 104.00 | L. D. Bauman. | |
| 104.00. | J. J. Smitel. | |
| 104.00 | Jacob Bamlow. | By Charles B. Bradley." |
| 104.00 | Jos. Marchette. | |
| 104.00 | Frank Sasinski. | |
| 104.00 | Carl Doesburg. | |
| 104.00 | P. E. Jensen. | |
| 104.00 | Harvey E. Hegg. | |
| 104.00 | August Ecklund. | |
| 88.00 | S. W. Frazier. | |

The pay roll was taken by Bradley to the Cook county comptroller's office, where he received fourteen warrants made out for and payable to the order of those fourteen pretended employes, Bradley signing the different names to the pay roll and then writing transversely across the page, "By Charles H. Bradley." Bradley indorsed the names of the payees on the backs of these warrants, making some attempt to disguise the handwriting, and deposited them on December 15, 1898, in the Chicago National Bank to the personal account of John A. Cooke. The warrants were collected by the Chicago National Bank from Cook county on that date and the amount of them, $1,440, placed to the credit of John A. Cooke's personal account in that bank, thirteen of them being for $104 each and the other for $88. These warrants were introduced in evidence by the state. The first one is in words and figures as follows:

"No. 36,407..    STATE OF ILLINOIS.            $104.00.

Treasurer of Cook County.

Payable out of Salary Fund.

Circuit Court Appropriation.

Series 1898.

Court House, First Floor, South End.

Countersigned by

JAMES C. IRWIN,

President.

CHICAGO, ILL., Dec. 12, 1898.

Will pay Gustav Anderson or order $104.00, for clerk, November salary.

Countersigned and registered.

S. B. RAYMOND,                     PHILLIP KNOPF,

Treasurer.                         Comptroller.

Stamped across the face:  S. B. Raymond, County Treasurer.

Paid Dec. 16, 1898.

Endorsed on the back:  Gustav Anderson; pay to the Chicago National Bank or order John A. Cooke, Chicago National Bank, Paid."

The other thirteen salary vouchers are identical except that the name of the payee is different in each one, and except that the last one is for $88 instead of $104.   The endorsement for deposit on each of these warrants was made by a rubber stamp, "Pay to the Chicago National Bank or order John A. Cooke," the word "clerk" being stricken out.   This sum of $1,440, being the amount of the fourteen salary vouchers for the November salary, 1898, is the first amount as disclosed by the record which the plaintiff in error appears to have obtained from Cook county by means of false pretenses.   From that time until November, 1904, the record shows that plaintiff in error obtained in this way $22,590.51 by means of so called "stuffed pay rolls."   One of these pretended employes was a West Side park policeman, and another a letter carrier in the employ of the United States government.

From November, 1898, until July, 1904, Charles H. Bradley acted as the principal instrument in perpetrating these frauds. From that time until December, 1904, when plaintiff in error went out of office, John E. Seinwerth acted as the principal conspirator associated with him in obtaining this money. Every month during that whole period the names of fictitious persons or persons who had no connection with the office of the circuit clerk, and who performed no services there and who were entitled to no compensation whatever from Cook county, were placed upon the pay roll by Bradley while he was acting as chief clerk and afterward by Seinwerth while he acted as chief clerk, and under the direction of plaintiff in error. Sometimes the names of old clerks who had at one time been employed in the office of clerk of the Circuit Court were used, sometimes the names of real persons who were never in that office, but usually the names were taken by Bradley from the city directory. In one instance plaintiff in error himself wrote out a list of ten names and gave it to Bradley with instructions to place those names on the pay roll for December, 1899, each for $100. The ten vouchers, aggregating $1,000, were all collected and the money deposited to John A. Cooke's personal account in the Chicago National Bank February 2, 1900, and the original deposit slip showing that deposit was identified by Bradley and introduced in evidence by the state. The pay rolls for the circuit clerk's office, containing names of real as well as pretended employes, were taken by the chief clerk to the office of the county comptroller, and there the salary vouchers were made out. The actual employes would call and get their salary vouchers and receipt for them. The chief clerk, either Bradley or Seinwerth, would get the vouchers for the fictitious or pretended employes and sign for them. Bradley or Seinwerth then were accustomed to take the vouchers to the county treasurer's office, collect the amounts and give the currency to plaintiff in error who, after counting it would hand it back to Bradley or Seinwerth, with instructions to de-

posit it to his (Cooke's) personal account in the Chicago National Bank. This was done in every instance while Bradley acted as chief clerk except the first. That was in November, 1898, while Bradley, instead of taking the fourteen vouchers aggregating $1,440 to the county treasurer's office and getting the currency for them, endorsed on them the names of the payees and deposited them to defendant's personal account in the Chicago National Bank. The evidence shows that in many instances the exact amount of the vouchers was the amount deposited in the Chicago National Bank to the personal account of John A. Cooke on the particular date.

The state introduced in evidence the original deposit slips made out by either Bradley or Seinwerth and given to the Chicago National Bank at the time the deposits were made. Bradley identified these slips as being in his handwriting or in the handwriting of Seinwerth, and the money was traced to defendant's personal account in the Chicago National Bank.

The indictment was returned April 28, 1906, and to escape the statute of limitations it must appear that the conspiracy existed after October 28, 1904. According to the uncontradicted evidence, the pay roll for October, 1904, was made out by Bradley under direction of defendant and delivered to the county comptroller after that date. It contained the names of two persons not employed in the office of the circuit clerk. Vouchers were made out payable to the order of these persons. The money for one of these vouchers is shown to have been taken out of the office drawer and paid to the defendant, and the voucher itself was deposited to the credit of the defendant as clerk November 5, 1904. The pay roll for the month of November is dated November 29, 1904, and contained the names of the same two persons who were not employed in the defendant's office. Vouchers were issued in their names and receipted for by Seinwerth, who had then become chief deputy. The money on one of these was likewise paid to the defendant out of the drawer, and

the voucher deposited in the bank to defendant's official account. The other voucher was handed to the defendant.

So far as appears, neither Bradley nor Seinwerth profited by the conspiracy, receiving only their regular salaries and the defendant being the sole beneficiary.

DANIEL DONAHOE and JAMES HARTNETT, for plaintiff in error.

JOHN J. HEALY, State's Attorney, and HOBART P. YOUNG, for defendant in error.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

That plaintiff in error, hereinafter referred to as the defendant, received and appropriated to his own use money belonging to the county of Cook and that he accomplished this by means of a conspiracy, combination and agreement with Bradley, his chief deputy, and subsequently with Seinwerth when the latter succeeded Bradley as chief deputy, is not, so far as we can discover, seriously disputed. The defendant's attorneys have, however, assigned a long list of alleged errors, some of which are argued at length, and it is contended that the sentence and judgment are contrary to law and should be set aside.

The first of the contentions so urged in defendant's behalf is that the court erred in overruling defendant's motion to quash certain paragraphs of the bill of particulars, in allowing the state's attorney to file an additional bill of particulars, to read these bills in his opening statement to the jury and in sending them to the jury at the request of the latter, while considering their verdict. It is contended that a bill of particulars is no part of the record, its purpose being to advise the defendant of the specific nature of the charges against him, that while such bill may be introduced as an admission against the party furnishing it, it is inadmissible for other purposes, and that the bills were

"in the nature of hearsay evidence." We do not concur in these contentions. The bills of particulars were not evidence at all, nor were they so used. To read from them in his opening statement to the jury was probably the shortest and most concise way of stating what the state's attorney expected to prove in support of the indictment. The original bill of particulars was filed in obedience to a rule on the state's attorney entered upon motion of the defendant. The additional bill sets out additional names of alleged pretended employes of the defendant as clerk of the Circuit Court and additional amounts which it was alleged the defendant unlawfully obtained and the dates. The motion of defendant for a bill of particulars was in recognition of their purpose as stated in McDonald v. The People, 126 Ill., 150-159, viz.: "to inform the defendant of the nature of the evidence and the particular transactions to be proved under the information, and to limit the evidence to the items or transactions stated in the bill of particulars." This being the purpose of such bills there was no error in nor was defendant prejudiced by their being read to the jury as a part of the People's opening statement. It was the jury's right to have in the outset just the information they contained, that it might know what specific unlawful acts the People proposed to introduce evidence to prove, in support of the indictment, and understand the nature and bearing of the evidence. For the same reason when in considering their verdict the jury asked for the bills of particulars containing a statement of "the items or transactions" relied upon by the People we are unable to discover in what respect the defendant was prejudiced by the Court's allowing the request any more than by the jury's having before them the indictment itself. They were entitled to the one as well as to the other. A bill of particulars is "deemed a part of the declaration, plea or notice to which it relates and is construed in the same way as though it had originally been incorporated in it." Starkweather v.

Kittle, 17 Wen. 21, cited in McDonald v. The People, 126 Ill. 150-160. It has been said to be "an amplification of the declaration." Mayor v. Marrener, 49 Howard's Prac. Rep., 36-39, cited in Sullivan v. People, 108 Ill. App. 326-338. In McDonald v. The People, 126 Ill. 150-161—a criminal case—it was said: "The object of a bill of particulars is to give the accused notice of the specific charge he is required to meet on the trial so that he may be prepared to defend." Under the common law rule in criminal cases, it was within the reasonable discretion of the court to determine what papers introduced in evidence the jury should take with them when they retired to deliberate on their verdict (Bishop on Crim. Proc., 3 Ed., Sec. 9829), and the exercise of such discretion is not error "unless the reviewing court can see that such a course was prejudicial to the defendant and ought not in the exercise of sound discretion and judgment to have been pursued." Dunn v. The People, 172 Ill. 582-588. There was no abuse of discretion in respect to the bills of particulars in the case before us, which were, as we have said, in no sense evidence nor used as such.

It is claimed that the court erred in admitting "hearsay and prejudicial evidence." This contention refers to the introduction of certain entries on the books of the Chicago National Bank in which the defendant kept his personal account. The cashier of that bank, who held that position during all the years of the transaction shown by the evidence, produced and identified the defendant's original deposit slips. These were in the handwriting of Bradley or of Seinwerth, by whom at defendant's direction in the ordinary course of the procedure followed, the fictitious salary vouchers were obtained from the county comptroller, by whom they were indorsed in the names of the payees by whom the money was collected from the county treasurer and by whom it was given to the defendant. The latter, after counting the money, ordinarily handed it with his bank book back to Bradley or to Seinwerth, whichever was chief deputy

at the time, by whom respectively the deposit slips were made out in defendant's name and the money deposited to defendant's personal account. The various deposit slips were indentified by Bradley and Seinwerth, respectively, by whom they were made out. The cashier produced the books of the bank containing entries corresponding apparently to the deposit slips already in evidence, pointed out and identified such entries, and explained the system of keeping the bank books. These entries were not made by the cashier in person, but by bookkeepers and receiving tellers, of whom there were from twenty to twenty-five, several of whom, it appears, have since the closing of the Chicago National Bank gone to various parts of this and other countries and are out of reach as witnesses. It sufficiently appears, we think, that it was practically impossible to produce the persons who had made these entries in the various books of the bank. Under these circumstances we are inclined to agree with what is said in Continental National Bank v. The First National Bank, 108 Tenn. 374: "We think it not necessary that the bookkeeper (of a bank) who made the entries should be examined as to their correctness. At the most he could only testify that the entries made by him are true entries of transactions reported to him by others.  *   *   *   It would seem that the cashier whose function it is to overlook all transactions at the counter and over the books and test each transaction through all its stages would be the person most competent to produce the books and vouch for their accuracy." In Loewenthal v. McCormick, 101 Ill. 143-148, the court states that "the books of the bank offered in evidence" showed certain things, and no objection seems to have been made to the introduction of the bankbooks on the grounds urged here. In Chisholm v. Beaman Machine Co., 160 Ill. 101-110, the court said that the books were properly admitted in evidence in connection with proof of certain facts and circumstances and that "their mere admission was not a determination of the weight to

which they were entitled as evidence, and it was the privilege of the appellants to attack their reliability by any legitimate testimony tending to show their incorrectness.'' The books in the case before us were introduced to show that the amounts of the deposit slips in evidence had passed to the defendant's credit on the books of the bank. For this purpose, when identified as they were, it would seem that the books were the best evidence. At all events, so far as we are advised, there is no attempt to deny that defendant got the money which the original deposit slips and the testimony of those who made the deposits show was deposited to his account. Whether therefore the admission of the books for the purpose stated was or was not objectionable, it was not harmful to defendant. Where a fact is clearly established by unimpeached evidence, the admission of cumulative evidence could have no prejudicial effect and is not ground for reversal. Siebert v. People, 143 Ill. 571-582.

It is further insisted in behalf of defendant that there is a fatal variance between the indictment and the evidence; that the indictment charges defendant with conspiracy with one Charles H. Bradley and with divers persons whose names were unknown to the grand jury, whereas it is claimed that by the bill of particulars and by the evidence it is contended and shown that defendant conspired with Charles H. Bradley, John Seinwerth and others, that John E. Seinwerth was a witness before the grand jury which returned the indictment and told the jury that his name was John E. Seinwerth. It is doubtless true that a defendant has the right to be fully informed of the particular charge made against him, that an averment in the indictment that a person is unknown to the grand jury is material. In Sullivan v. The People, 108 Ill. App. 328-337, it is said that as a general rule the names of persons with whom the indicted defendant conspired must be stated when known, that if on the trial it appears from the evidence the person or persons designated as unknown ''were known to the grand

jury when the indictment was found there can be no conviction of such persons,'' and that it is incompetent on the trial to prove as against the defendants the acts and declarations of a person not named in the indictment or referred to therein as unknown. Whether, as is insisted in behalf of the People, the views thus stated are in conflict with the weight of authority, we need not inquire. The testimony given by Seinwerth before the grand jury is not found in this record. Whether or not, therefore, his testimony there tended to show that he had a part in the conspiracy, or gave information tending to criminate himself we are not advised. There is no presumption that it did, and there is no evidence before us tending to show that the grand jury knew when the indictment was returned that Seinwerth was one of the members of the conspiracy. It appearing from the evidence that Seinwerth was in fact one of the conspirators and there being no evidence that he was known so to be by the grand jurors when the indictment was returned, he is necessarily among those described therein as "unknown" and there is no variance.

Seinwerth having thus been identified as belonging to the conspiracy "and the conspiracy being established, everything written or done by either of the conspirators in execution or furtherance of the common purpose is deemed to have been said, done or written by every one of them and may be proved against each.'' Lasher v. Littell, 202 Ill. 551-555. See also Spies v. The People, 122 Ill. 1-240-242-3; Van Eyck v. The People, 178 Ill. 199-200. In Wharton on Criminal Evidence, 9th ed., sec. 700, it is said that it "makes no difference as to the admissibility of the act or declaration of a conspirator against a defendant, whether the former be indicted or not or tried or not with the latter; * * * the principle upon which they are admissible at all being that the act or declaration of one is the act or declaration of all united in one common design, a principle which is wholly unaffected by the consideration of their being jointly indicted.''

We do not concur in defendant's contention that the agreement between the defendant and Seinwerth was a new and separate combination. The evidence shows that Seinwerth became a participant in the original conspiracy, while it was still in full operation. Bradley had not retired from it. He was still aiding the defendant in carrying out his purpose and Seinwerth was merely brought into it as another of the defendant's aids.

It is contended that the Statute of Limitations began to run in this case from the time of the commission of the first overt act in pursuance of the conspiracy by Bradley and the defendant in 1897, without reference to overt acts subsequently committed. Since the writ of error in the case at bar was sued out we have had occasion to consider this question at length in the case of Wallace A. Lowell v. The People, to which reference may be had. 131 Ill. App. 137. The argument made in that case in behalf of the defendant was the same now urged upon our attention in the case at bar. Our conclusion was in part thus stated: "It would seem to be sound common sense, as well as good law in this jurisdiction, that each overt act by which the conspiracy becomes effective should be deemed a renewal of the original conspiracy. * * * To hold otherwise would be not only contrary to the law as stated by our Supreme Court, but would exalt a technical objection in favor of the lawbreaker to the dignity of a substantial and just defense."

It seems to be claimed that the fees of the office of clerk of the Circuit Court belonged to the clerk and that he could not therefore be guilty of a conspiracy to obtain them or any part of them by false pretenses. The language of the statute is a sufficient answer to such contention (R. S. chap. 53, sec. 31) and there was no error in refusing to permit the defendant's attorney to read to the jury the opinion in the case County of Cook v. Healy, 222 Ill. 310. Nor can we concur in the contention that there is a reasonable doubt under the evidence as to the defend-

ant's guilt, notwithstanding the evidence tending to show a previous good character for honesty.

It is further urged that the defendant was tried by an illegal jury, in that the court overruled defendant's challenges for cause of two of the veniremen, whereupon defendant challenged them peremptorily and they were excused. It is said that having thus erroneously compelled defendant to use two of the peremptory challenges allowed him under the statute, it was error not to allow him to use them against two other veniremen accepted as jurors over his objection, the court ruling that he had then exhausted all the peremptory challenges to which he was entitled by law. We find no error in the action of the court overruling defendant's challenges for cause of the two veniremen who were afterward peremptorily challenged by defendant. These men had slight opinions based upon what they had read in the newspapers, but both stated that they could decide the case on the law and evidence alone. Whether they would have been disqualified as jurors otherwise or not, any such objection to their competency is removed by the statute. (R. S. chap. 78, sec. 14, 3rd proviso.) Wilson v. The People, 94 Ill. 299-306; Smith v. Eames, 3 Scam. 76-81.

It is further urged that there was error in permitting the prosecuting attorney to make irrelevant, improper and prejudicial remarks and arguments to the jury over defendant's objections. It would serve no good purpose to extend this opinion by reviewing the language objected to. We have examined it carefully and it must suffice to say we do not consider the objection well founded. The same must be said as to objections made to certain instructions, some of which are practically disposed of by the views above expressed. The defendant's contention to the effect that some of the evidence introduced tended to prove forgery and that the misdemeanor charged in the indictment should be deemed merged in the felony is not well founded. In Graff v. The People, 208 Ill. 312-320-1, a similar contention is considered and it is said

that where "the conspiracy alleged in the indictment is a misdemeanor and the offense for the commission of which the conspiracy was formed is also a misdemeanor and is completed, it has been uniformly held in this country that there is no merger;" and that "if the indictment be for a conspiracy which is a misdemeanor and the conspiracy comprises the doing of many things and the proof shows that among the overt acts done pursuant to the conspiracy is a felony, it would seem the greater weight of authority is that a conviction may nevertheless be had for the conspiracy."

We are convinced from careful consideration of the record that the defendant has had a fair trial, free from substantial error, and that the verdict of the jury is amply sustained by the evidence. The judgment of the Criminal Court will therefore be affirmed.

*Affirmed.*