THEODORE PODOLSKI

*v.*

A. L. STONE, Assignee, *et al.*

*Opinion filed October 19, 1900.*

1. APPEALS AND ERRORS—*when right of general creditors to defend application for preference cannot be questioned.* The right of general creditors of an assignor to appear and defend against a petition by a judgment creditor for a preference cannot be questioned in the Supreme Court, in the absence of any objection below or motion to strike their answers from the files.

2. VOLUNTARY ASSIGNMENT—*county court may determine bona fides of claims.* When property has come into the physical possession of an assignee under the provisions of the Voluntary Assignment act, the county court has exclusive jurisdiction and power, primarily, to adjudicate the question of the *bona fides* or fraudulency of a judgment held by a creditor who claims a preference thereunder.

3. SAME—*when judgment creditor is not entitled to preference.* A judgment creditor is not entitled to preference over the insolvent's general creditors where it appears the giving of the judgment note and the entry of judgment thereon were the result of collusion

between the insolvent and the alleged creditor, with knowledge of the insolvent condition and in view of an intended assignment.

4. FRAUD—*fraud need not be proved by positive evidence.* While fraud is not to be presumed, yet it may be inferred from facts and circumstances shown and inferences deducible therefrom, based upon the probabilities of human conduct.

5. EVIDENCE—*when testimony may be rejected though not directly contradicted.* A court or jury is not bound to accept testimony of a witness as true merely because there is no direct testimony contradicting it, if it contains such inherent improbabilities or contradictions as alone, or in connection with other circumstances in evidence, satisfy them of its falsity.

*Podolski* v. *Stone*, 86 Ill. App. 62, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. R. W. S. WHEATLEY, Judge, presiding.

JOHN E. KEHOE, and JAMES R. WARD, for appellant:

An insolvent debtor in this State has the legal right to secure any of his *bona fide* creditors by a judgment note or otherwise, while he retains, at the time, dominion over his property to the exclusion of all other creditors. *Morris* v. *Blackman*, 179 Ill. 106; *Rockford Grocery Co.* v. *Grocery Co.* 175 id. 92; *Gottlieb* v. *Miller*, 154 id. 51; *Hier* v. *Kaufman*, 134 id. 223; *Field* v. *Geohegan*, 125 id. 69; *Wood* v. *Clark*, 121 id. 359; *Preston* v. *Spaulding*, 120 id. 217.

*Bona fide* creditors are protected in availing themselves of security obtained in good faith. Mere knowledge of insolvency does not import bad faith. *Schwartz* v. *Messinger*, 167 Ill. 478; *Bank* v. *Sanchez*, 131 id. 336; *Glanz* v. *Smith*, 177 id. 156; *Mathews* v. *Reinhardt*, 149 id. 644.

Fraud is never assumed or presumed, but must be affirmatively proved by the party charging it. *Stamping Co.* v. *Hanchett*, 25 Ill. App. 204; *Dexter* v. *McAfee*, 163 Ill. 509; *Mey* v. *Gulliman*, 105 id. 285; *Shinn* v. *Shinn*, 91 id. 486.

Where property is assigned by an insolvent debtor under the Voluntary Assignment act, his assignee takes his title as a volunteer, subject to all the liens, equities

and infirmities to which it was subject in the hands of the assignor. The assignee takes no greater right or title to the property than the insolvent had. *Union Trust Co.* v. *Trumbull,* 137 Ill. 179; *Hooven* v. *Burdette,* 153 id. 679; *Davis* v. *Dock Co.* 129 id. 187; *Glanz* v. *Smith,* 177 id. 156.

The burden rested upon appellee to overcome, by competent and sufficient evidence, the *prima facie* case made by appellant and establish a fraudulent intent on the part of appellant. Knowledge of insolvency is not sufficient to import a fraudulent intent. *Zick* v. *Guebert,* 142 Ill. 158; *Mathews* v. *Reinhardt,* 149 id. 644; *Stamping Co.* v. *Hanchett,* 25 Ill. App. 204; *Dexter* v. *McAfee,* 163 Ill. 509.

The appellee is bound by the testimony of appellant and his attorney. Appellee having called and examined them as his witnesses, and having failed to establish by other evidence different facts and circumstances from those testified to by appellant and his attorney, in the absence of such countervailing testimony the statements of the witnesses must be regarded as true. *Bowman* v. *Ash,* 143 Ill. 664; *Sawyer* v. *Moyer,* 109 id. 465.

BINSWANGER & JACKSON, for the assignee.

MOSES, ROSENTHAL & KENNEDY, PAM, CALHOUN & GLENNON, and CUSTER, GODDARD & GRIFFIN, for the creditors.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

On May 31, 1898, at the hour of 1:39 P. M., there was filed in the office of the recorder of deeds of the county of Cook a deed of assignment of S. Levy and I. Berkenfield, partners composing the firm of S. Levy & Co., who for some time prior thereto had been engaged in mercantile business in Chicago, transferring their property to A. Stone, as assignee, for the benefit of creditors, which deed was also filed the same day, at 1:43 P. M., with the

clerk of the county court. The deed of assignment was delivered to Stone about ten minutes before eleven o'clock of May 31, having been executed that day. On May 27, 1898, Levy and Berkenfield executed and delivered to the appellant a judgment note for $3500, which it is claimed was given in payment of a former note for the same amount, dated January 27, 1898, due at three months, on which note the appellant had judgment confessed on May 31, 1898, and execution placed in the hands of the sheriff of Cook county at 10:16 A. M. When the sheriff arrived to make the levy he found the door of S. Levy & Co. closed and the property in the hands of the assignee. On Saturday, May 28, appellant bought about $5700 of the book accounts of the firm, as he claims, at seventy cents on the dollar. From the remaining book accounts which passed to the assignee the assignee has collected only $828, and has collected altogether about $7000. Afterwards appellant filed his affidavit of claim and petition, setting out his judgment and execution and asking for a preference for the amount of the same, and costs. To this petition answer was filed by the assignee and also by other creditors of S. Levy & Co., denying there was any consideration for the note and judgment, and averring that the note had been given and judgment had thereon in contemplation of the intended assignment of S. Levy & Co. and by collusion between that firm and the appellant, and was in fraud of the rights of the general creditors.

On the hearing the appellant was called as a witness on the part of the objectors, the appellees here, and his testimony, together with the inferences obtained from the testimony of one L. H. Baldwin, book-keeper for the Continental National Bank of Chicago,—with which bank the firm of S. Levy & Co. had a deposit during January, and from whose testimony it appears that their deposits were as follows: January 26, $1202.06; 27th, no deposit; 28th, $108.28; 29th, $147.17; 30th, (Sunday,) nothing, and

31st, $624.19,—constitutes all the evidence in the case relative to the consideration for the note, collusion between appellant and S. Levy & Co., or knowledge by appellant of the intended assignment, or of other facts going to defeat the right of appellant to a preference. The county court denied the relief sought and dismissed the petition, which judgment has been affirmed by the Appellate Court and this appeal is prosecuted, and the only real controversy and question for our determination is the correctness of that finding under the evidence introduced.

Complaint is made of the admission of certain evidence, but this court will presume, where a case of this kind is heard by the court, that it considered only competent evidence and rejected that which was incompetent.

Complaint is also made that the county court had no power to hear and adjudicate the question as to the *bona fides* or fraudulency of appellant's judgment. In this appellant is in error. While a county court has no general chancery jurisdiction, yet the issues here presented are clearly cognizable under the powers conferred by the Assignment act. As was said in *Friedman* v. *Podolski*, 185 Ill. 587: "When property has come into the physical possession of the assignee under the provisions of the said act, that court has exclusive jurisdiction and power primarily to adjudicate and determine the rights of all parties claiming title thereto or an interest therein." And this has long been the unquestioned practice of the courts of our State. *Atlas Nat. Bank* v. *More*, 152 Ill. 528.

Appellant also insists that the general creditors of S. Levy & Co. are improper parties to this proceeding. It is sufficient answer thereto, that Stone, the assignee, who is unquestionably a proper party, is a party to the record. Nor was any objection made or motion entered to strike the answers of the several creditors from the files, and their right to appear and defend cannot now be brought in question.

We come, then, to the main question of this contro-
versy as above stated, viz., what effect shall be given
to the testimony of the appellant, called as a witness
against himself.   Reading his testimony in the light of
the unquestioned facts appearing on this record, we be-
lieve we fairly state its effect in saying that it irresisti-
bly impels to the belief that in the giving of the judgment
note and the entry of judgment thereon he was acting in
collusion with S. Levy & Co., with knowledge of their
insolvent condition and in contemplation of their in-
tended assignment, which fact appearing by competent
evidence, he was entitled to no preference.   *Preston* v.
*Spaulding*, 120 Ill. 208; *Hide and Leather Bank* v. *Rehm*, 126
id. 461; *Sweet, Dempster & Co.* v. *Scherber*, 42 Ill. App. 237.

Podolski testifies that when he first loaned the $3500
he did not ask anybody as to the condition of the firm or
of the amount of business they were doing, and did not
know where they were doing their banking business;
that he got the money out of a safety deposit box; that
the way he came to loan the money, he was in the busi-
ness of lending money; that his wife had some dresses
made at the store of S. Levy & Co.; that several weeks
before he let them have the money Levy and his wife
were taking dinner with his family, and Levy asked him
if he knew where he could borrow some money, and "I
told him I had some money I wasn't using," and he said,
"All right;" that from that time to January 27, 1898, he
had no other conversation with Levy, and never talked
with Berkenfield, the other partner, about it at all.   As
to the taking of the judgment note, he gives as a reason
that he intended going to Europe soon after, (which he
did,) and wanted to get his business in better shape; that
he did not decide to have judgment entered upon it until
Sunday, May 29, when he heard some talk at his club that
Levy had disposed of some real estate on the west side.
He testifies positively that when he asked Levy for the
money on his first note he was told by him that the bank

186—35

was pressing them and that collections were dull, but that he had no idea anything was wrong until he heard of this transfer of real property. This, it will be remembered, was after he had bought the book accounts, as testified to by him. As against his positive testimony, and in addition to such suspicious circumstances as appear above, Levy was called but refused to testify, claiming that he was not required to give self-criminating evidence. When Stone took possession of the store, as assignee, the safe was locked and it was necessary to get an expert to open it. Neither the journal, cash book, ledger nor sales book was found, and they have never been discovered by him. What was thought to be a large business house has realized but about $7000 of assets. Other facts also appear which it is unnecessary to recite here, among which might be mentioned the obtaining by appellant, at the same time that he got his own judgment note, of a judgment note for one Rosenthal for $1000; the effort on the part of counsel for appellant to prevent a full investigation; the fact that one of the counsel here appearing of record for appellant acted for S. Levy & Co. and drew the deed of assignment. Many of these facts are entirely inconsistent with Podolski's relations with Levy, either as friend or business acquaintance.

Appellant insists, however, that, on his petition, the introduction and proof by him of the judgment and execution, and their priority over the deed of assignment, entitled him *prima facie* to the relief prayed, and contends that the appellees were bound by the positive testimony of the appellant and cannot indulge in probabilities of fraud, and cites *Bowman* v. *Ash*, 143 Ill. 649, *Sawyer* v. *Moyer*, 109 id. 461, *Shinn* v. *Shinn*, 91 id. 477, *Mey* v. *Gulliman*, 105 id. 272, *Germania Ins. Co.* v. *Klewer*, 129 id. 599, and other authorities; and that under the rules of evidence, even if appellant's evidence be such as to discredit the whole, it would only justify a rejection of his entire testimony, except in so far as it might be corroborated

by other credible evidence, and in such event the case already made by appellant would remain wholly unimpaired.

There is strong ground for a distinction between the weight to be given to the testimony of a disinterested witness and that of a litigant party to the record. Here appellant was seeking affirmative relief. Under the rules applicable to his position, fraud or collusion, if appearing, would prevent his obtaining the relief sought. The matters rested wholly within his own knowledge or that of Levy. While fraud is never to be presumed, yet it may be inferred from the facts and circumstances shown and inferences deducible therefrom, based on probabilities of human conduct. If the rule were as contended for by appellant, parties injured would be prevented from an investigation into the facts surrounding a preconceived and concerted action on the part of persons acting to defraud. Such witnesses, acting and defending in their own interest, may be examined and testimony afterwards introduced the effect of which is to contradict their testimony, and their statements do not conclusively bind the party calling them. (*Highley* v. *American Exchange Bank*, 185 Ill. 565.) But here, in order to justify the findings of the trial and Appellate Courts, the witness must be discredited by the facts he himself states, and not by the facts stated by others.

In *Anderson* v. *Miljengren*, 52 N. W. Rep. 219, it is said: "The rule undoubtedly is, that where the positive testimony of a witness is uncontradicted and unimpeached, either by positive testimony or by circumstantial evidence, either intrinsic or extrinsic, it cannot be disregarded, but must control the decision of the court or jury. But a witness may be contradicted by the facts he states as completely as by direct adverse testimony. A court or jury is not bound to accept it as true merely because there is no direct testimony contradicting it, where it contains such inherent improbabilities or contradictions

which alone, or in connection with other circumstances in evidence, satisfy them of its falsity."

In the case of *Quock Ting* v. *United States,* 140 U. S. 417, the court say: "Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court. But that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his account of particular transactions or of his own conduct as to discredit his whole story. His manner, too, of testifying, may give rise to doubts of his sincerity and create the impression that he is giving a wrong coloring to material facts. All these things may be properly considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced."

In *Elwood* v. *Western Union Tel. Co.* 45 N. Y. 549, it is said: "It is undoubtedly the general rule that where unimpeached witnesses testify, distinctly and positively, to a fact, and are uncontradicted, their testimony should be credited and have the effect of overcoming a mere presumption. But this rule is subject to many qualifications. There may be such a degree of improbability in the statements themselves as to deprive them of credit, however positively made. The witnesses, though unimpeached, may have such an interest in the question at issue as to affect their credibility. The general rules laid down in the books at a time when interest absolutely disqualified a witness, necessarily assumed that the witnesses were interested. That qualification must, in the present state of the law, be added. And furthermore, it is often a difficult question to decide when a witness is, in a legal sense, uncontradicted. He may be contradicted

by circumstances as well as by statements of others contrary to his own. In such cases courts and juries are not bound to refrain from exercising their judgment and to blindly adopt the statements of the witness, for the simple reason that no other witness has denied them and that the character of the witness is not impeached."

Proof of fraudulent or collusive acts is nearly always difficult. Fraud lurks in the dark. Its ways are devious, often, and at all times intended to be hidden, and if brought to light it must usually be by the means of presumptive or circumstantial evidence,—not presumptions of law, but presumptions of fact, which differ from presumptions of law in this essential respect: "that while those are reduced to fixed rules and constitute a branch of the particular system of jurisprudence to which they belong, these merely natural presumptions are derived wholly and directly from the circumstances of the particular case, by means of the common experience of mankind, without the aid or control of any rules of law whatever." (1 Greenleaf on Evidence, 44.) In this case the court heard the evidence, and had the advantage of opportunity of judging of the weight to be given to the testimony of appellant by his actions and demeanor while testifying, as well as of the other witnesses, which we have not, and that finding is entitled to the same force and effect as a verdict of a jury. (*Wood* v. *Price*, 46 Ill. 435; *Field* v. *Chicago and Rock Island Railroad Co.* 71 id. 458.) In the latter case the court seems to have applied, in a great measure, the rules for the determination of the credibility of evidence here laid down.

We find no error in the record, and the judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*