THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDGAR M. DAVIS, Plaintiff in Error.

*Opinion filed October 27, 1915.*

1. CRIMINAL LAW—*what is not sufficient proof to show embezzlement.* Mere proof of the receipt of funds and failure to account therefor is not sufficient, in itself, to show embezzlement, but there must be other evidence of the conversion.

2. SAME—*proof must show that the defendant fraudulently converted to his own use the funds received.* The mere depositing in his private account of the proceeds of notes, bonds and stocks· received by an agent from his principal does not show that he is guilty of embezzlement or fraudulent conversion, but there must be proof, beyond a reasonable doubt, that he converted to his own use some of the property received by him.

3. SAME—*when conviction for embezzling proceeds of sale of bonds cannot be sustained.* A conviction for embezzling the proceeds of the sale of bonds cannot be sustained where that offense is not charged in the indictment nor mentioned in the bill of particulars, the charge being embezzlement of the bonds themselves.

4. SAME—*general rule as to force of positive testimony of an unimpeached witness.* Positive testimony of a witness, uncontradicted and unimpeached either by direct testimony or circumstantial evidence, cannot, as a general rule, be disregarded but must control the decision of the court or jury, particularly where it is not inherently improbable or contradictory.

5. SAME—*where venue of indictment for embezzlement should be laid.* The venue of an indictment charging embezzlement, consisting of a failure to account, should be laid in the county and State where the accused was under obligation to account, and if the parties treated the home of the principal as the place of accounting the venue of the indictment is properly laid there, even though the power of attorney under which the accused acted is silent as to the place of accounting and no agreement in regard thereto is shown.

6. SAME—*when demand is not a part of offense of embezzlement.* Where an indictment for embezzlement is based upon sections 74 and 75 of the Criminal Code a demand for an accounting is not a constituent element of the offense, as a demand is not essential unless made so by statute.

7. SAME—*when receipts to agent are admissible on trial for embezzlement.* A written receipt, properly identified, is *prima facie* evidence of the truth of the recitals which it contains, and on the

trial of an agent for embezzlement for failure to account, receipts given to the agent for payments made by him in the principal's business are competent evidence of the amounts paid.

8. SAME—*when instruction as to secreting with intent to embezzle is improper.* If there is no evidence tending to show that the accused secreted money, goods or property with intent to embezzle or fraudulently convert the same to his own use and no count in the indictment to that effect, instructions which embody that fact in defining the offense of embezzlement are improper.

9. SAME—*instructions should confine jury to evidence supporting bill of particulars.* Where a bill of particulars has been filed in an embezzlement case the instructions should confine the consideration of the jury to the evidence supporting the charges of such bill.

WRIT OF ERROR to the Circuit Court of Jersey county; the Hon. FRANK W. BURTON, Judge, presiding.

FERNS & SUMNER, and CHARLES P. WISE, for plaintiff in error.

P. J. LUCEY, Attorney General, and D. E. DETRICH, (W. J. CHAPMAN, State's Attorney, and GEORGE P. RAMSEY, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

This indictment for embezzlement was returned against plaintiff in error at the March term, 1914, of the circuit court of Jersey county. It contains six counts. The first charges him, as agent or attorney in fact of Anna B. Cross, with embezzling and fraudulently converting to his own use $500,000 worth of her property and moneys. The second count is like the first, except that it charges him only as the attorney in fact of Anna B. Cross. The third charges him with embezzlement of a like amount of money of the goods, chattels and moneys of said Anna B. Cross then and there entrusted to him by her for safe keeping and management; the fourth, with the embezzlement of certain moneys, notes and securities of the value of $500,000,

of the goods and property, chattels and money of said Anna B. Cross. The fifth charges him with receiving and taking possession, as the agent or attorney in fact of said Anna B. Cross, of $100,000 worth of stock of the St. Louis Fire Insurance Company, of the property of the said Anna B. Cross, and embezzling and fraudulently converting said stock to his own use without her consent. The sixth is like the fifth, except that it charges plaintiff in error with embezzling first mortgage bonds of the Alton, Jacksonville and Peoria Railway Company of the value of $50,000, the property of said Anna B. Cross. Defendant was out of the State at the time the indictment was found, but voluntarily returned, appeared and was arraigned and plead not guilty. On a trial before a jury a verdict of guilty was returned and judgment entered accordingly. After motions for new trial and in arrest of judgment were overruled plaintiff in error was sentenced to imprisonment in the Southern Illinois penitentiary until discharged by due process of law. This writ of error was thereafter sued out.

The proof on the trial showed that Andrew W. Cross, of Jerseyville, Illinois, died February 1, 1909, in St. Louis, Missouri, at the home of plaintiff in error, who was his son-in-law. By his last will and testament he left a legacy of $3000 to his only child, Ida, the wife of the plaintiff in error, and the rest of his estate to his wife, Anna B. Cross, naming her as executrix without bond. Plaintiff in error was married to the daughter of Andrew W. and Anna B. Cross in 1898. They had lived most of the time after their marriage, up to the time of her father's death, in St. Louis, plaintiff in error being then president of the St. Louis Fire Insurance Company. On February 9, 1909, Mrs. Cross, while visiting at the home of plaintiff in error in St. Louis, shortly after the funeral, made and delivered to plaintiff in error a power of attorney authorizing him to sell any and all shares of stock belonging to her and receive dividends, execute bonds, deeds and notes, convey

real estate and give deeds for the same. This was duly acknowledged before a notary public in St. Louis. Mrs. Cross at this time was about sixty years of age and apparently very little acquainted with business methods or with the business or property of her husband, the latter having also attended, in his lifetime, to the financial matters in which she was interested. Mrs. Cross was duly appointed in the Jersey county court as executrix of her husband's will, and under the advice of plaintiff in error employed Davis' father as attorney to perform the legal work in connection with the estate.

At the time of his death, and for a number of years prior thereto, Andrew W. Cross was president of the National Bank of Jerseyville and was largely instrumental in the organization of the Alton, Jacksonville and Peoria Railway Company, an electric line which was planned to run between Alton and Peoria, through Jerseyville and Jacksonville. At the time he died the railway had only been constructed and put in operation from Alton to Godfrey, about five and a half miles. The evidence shows that in building this road he had assumed obligations to the amount of $175,000, in round numbers, largely as indorser of notes to raise money which was expended in its construction. The evidence tends to show that this amount was about what his entire estate was worth. The inventory showed that he owned at the time of his death an undivided one-half of 320 acres of land in Wayne county, Nebraska, the whole of 320 acres in Cheyenne county, Nebraska, 800 acres in Gage county, Nebraska, some lots in Nebraska and Jerseyville, and 953°acres of land in Jersey county; that he also owned notes and accounts amounting to about $18,627.09 and stocks of the par value of approximately $136,000, estimated to be worth at the time $39,349.47, including $5000 in par value of stock in the St. Louis Fire Insurance Company; that he had no cash. on hand. The record shows that he had overdrawn his

bank account in the National Bank of Jerseyville $338.79. Mrs. Cross' property at the time of her husband's death included a half interest in certain land in or near Jerseyville and the full interest in about 1100 acres and a half interest in about 320 acres in Nebraska, a half interest in a store building in Jerseyville and a half interest in a farm in Sangamon county. The other half interest in the Jersey county and Sangamon county land was owned by her sister, Mrs. Fletcher.

Immediately after being appointed attorney in fact by Mrs. Cross to take charge of her business affairs plaintiff in error undertook that work. It may be noted in this connection that Andrew W. Cross, a few weeks before his death, executed a power of attorney to plaintiff in error worded substantially the same as the power of attorney thereafter executed by Mrs. Cross. Cross' health, apparently, at the time he executed this power of attorney, was very poor, but there is nothing in this record to indicate that plaintiff in error took charge of Cross' business before his death, though plaintiff in error testified they had advised together quite often with reference thereto. Of the $175,000 of debts owed by Cross at the time of his death only two claims were presented against his estate,—one for $67,475.10 by the Mercantile Trust Company of St. Louis, which was allowed October 23, 1909, and one by the National Bank of Jerseyville for $5740.63, allowed February 5, 1910. The claim of the Mercantile Trust Company was satisfied, so far as the estate of Cross was concerned, by borrowing from the American Trust Company of St. Louis a sufficient sum for the purpose, Mrs. Cross and Aaron O. Auten, then president of said electric railway company, giving their note therefor, dated December 24, 1909. For the remainder of the $175,000 indebtedness Mrs. Cross at various times gave her personal notes. During Cross' lifetime said railway company had placed a mortgage on its property to secure an issue of $2,000,000 first mortgage

bonds for the purpose of financing the company and constructing its road. The board of directors raised $98,000 by selling $15,000 of these bonds to the National Bank of Jerseyville and by borrowing from the Mercantile Trust Company of St. Louis $83,000, represented by two notes of the railway company,—one for $75,000 and one for $8000,—signed or indorsed by each of the directors, Cross included, and further secured by $1,985,000 of the said $2,000,000 of bonds as collateral.

After the plaintiff in error took charge of Mrs. Cross' business the affairs of the electric railway demanded his immediate attention. February 15, 1909, said two notes last mentioned were protested for non-payment, and plaintiff in error, with the approval and co-operation of Mrs. Cross, borrowed $10,000 and paid it on the notes. Later, with her approval, on May 19, 1909, he made a further payment of $10,000, thus reducing said notes to $63,000. Shortly after her husband's death Mrs. Cross discussed with plaintiff in error the business affairs of her husband and the condition in which he had left the electric railway. She said in her testimony that what she wanted to do was to go on with the railroad and save something for herself to live on. The testimony of plaintiff in error is also to the effect that Mrs. Cross stated that if the railroad could be constructed as planned it would be quite a monument to her husband. Shortly after this discussion, plaintiff in error, with the then president Auten and some others, attempted to raise money enough to continue the road to Jerseyville. They also considered plans looking toward the sale of the entire road but did not succeed in getting any satisfactory offer of purchase. It appears from the evidence that the railroad was not paying for its operation, and plaintiff in error raised money from the estate of Cross and the property of Mrs. Cross for its pay-rolls and other expenses. Having found it impossible to sell the road or raise more money on the $2,000,000 bonds already issued

on the five and one-half miles constructed, the board of directors, with the approval of plaintiff in error, ordered a new issue of $600,000 of bonds in order to pay off a part of the company's debts and to continue the work of construction. These bonds were issued and some of them sold in Alton in 1910 at ninety cents on the dollar. Contracts for construction work and material were entered into and the work of extending the road from Godfrey to Jerseyville begun. It was impossible to sell the rest of the bonds, and the best that could be done was to borrow money from the banks and use the bonds as collateral security for such loans, and apparently contractors and material-men were induced to accept some of these bonds as part payment of their claims. The funds thus raised proving inadequate, money was advanced by plaintiff in error from time to time to meet the requirements of constructing and equipping the road. Plaintiff in error testified that this was done with Mrs. Cross' knowledge and approval, and she in her testimony does not deny that he talked with her frequently about the construction of the road and told her he was advancing money and from what sources he was raising it. The money for this purpose was derived from the sale of the property left by Cross and that of Mrs. Cross. She denied knowing of the sale and disposition of her own property at the time it was disposed of, although she testified that the business was so complicated and difficult that she did not understand all that plaintiff in error told her about it. Some money was first raised by mortgaging a part of the Nebraska land. Afterwards this land was sold, Mrs. Cross signing and acknowledging the deeds. She does not deny that she read the deeds and knew their contents. Plaintiff in error testified that from the property of Mrs. Cross and her husband's estate he derived the sum of $236,498.73, all of which he expended in the management of Mrs. Cross' business and that of her husband's estate, including the building of the railway. He

testified that he not only spent this amount for said pur-poses but also additional amounts from his own funds, making the amount he had paid out, in all, $342,950.88, be-tween the time he took charge of the work and the time he was compelled by poor health to give it up, in September, 1911. The evidence tends to show that at the last mentioned date all of the right of way between Godfrey and Jerseyville had been secured, paid for and graded, and that all the material to be used for the road and power house, including rails and ties, was on the ground and the rails laid as far as the Bluff line crossing below McClusky, and that practically all the overhead work had been done as far as McClusky, which is about eleven miles from Godfrey.

The plaintiff in error continued to live at his home in St. Louis until May, 1911, when he moved with his family to Jerseyville, Illinois, and for several months resided there with his mother-in-law. He had been for some time fail-ing in health, and in September, 1911, on account of poor health,—apparently a nervous breakdown,—he left for Los Angeles, California. When he left for the west he turned over the power of attorney to Mrs. Cross and from that time on had nothing further to do with her business affairs. Some time in September, 1911, a receiver was appointed for said electric railway company, and after he left Illinois the insurance company in St. Louis of which he had been president, being insolvent, was taken in charge by the public authorities of Missouri and its affairs put in process of liquidation. The evidence shows that at this time he had converted practically all of the property be-longing to the Cross estate, and also Mrs. Cross' own prop-erty, into money and had expended it in some manner. He testified positively that he had paid it all out in con-nection with the business of said electric railway except $100,925, which he had invested, with the consent and ap-proval of his mother-in-law, in stock of the St. Louis Fire Insurance Company, of which he at the time was president.

The evidence in the record tends to show that at the time plaintiff in error went west there was also due and unpaid from $115,000 to $125,000 (the evidence is not clear as to the exact amount) of the $175,000 indebtedness owed by Cross at his death, and that Mrs. Cross' name had been signed by herself, on the plaintiff in error's advice or by the plaintiff in error under his power of attorney, to additional indebtedness, amounting to about $275,000. At the time he left Jerseyville for California, in 1911, he was on friendly terms with his mother-in-law and the record shows that there was interchange of friendly letters between them after he left. During his absence she wrote him a letter asking him to make a statement of his account so far as he could, showing just how the affairs stood. He wrote a letter in response giving at some length a statement of the accounts connected with her own and her husband's estate. It appears from the record that this account was not at all complete. He stated in the letter that a part of his papers forwarded to him at Denver, Colorado, had been so injured by water while in the basement of her house at Jerseyville that it was impossible for him to tell anything from them. He closed the letter by saying, however, that if she desired any further information he would be very glad, so far as possible, to send it to her. It seems that after he remained in Los Angeles a time he returned as far east as Denver, and was living at the time of the trial at Phoenix, Arizona, apparently in fair health. The evidence disclosed, without controversy, that when he moved to Jerseyville he brought many of his private papers and books along with him, including check book stubs and other like memoranda; that when he left his mother-in-law's home for California they were packed in her cellar, and all or many of them were wet by the flooding of the cellar, caused by the breaking of the water pipes. He had these papers shipped to him in Denver, and testified they had been so injured by the water that they were of

very little value as memoranda, as he could not decipher them, and on that account he had destroyed many of said papers and books before the trial. Mrs. Cross testified that these papers were in her basement and were damaged by the water there. Other witnesses testified as to the injury done by the water. One witness who saw them after they were in Denver stated that most of the papers had been rendered quite illegible. Plaintiff in error, however, on the trial, testified at length in regard to the moneys he had received while acting as attorney in fact in charge of the business of Mrs. Cross for herself and as executrix, and how he paid it out, giving items of receipts and disbursements in detail. He stated that he had prepared a list, from which he testified, as to these receipts and disbursements as best he could from his recollection and the memoranda that he had on hand, so that he had made a complete typewritten memorandum of them. Such receipts and disbursements, itemized, were stated at length and in detail in his testimony as abstracted. They cover many pages, and show, as we find in the record, some 117 different items of receipts and 310 of disbursements. His testimony as to these items was not controverted by any other witness.

We find no evidence in the record that proves with that degree of certainty required in criminal cases, that the defendant fraudulently converted to his own use, without the consent of his employer, the property or funds in question. The most that the evidence, other than his testimony, shows or tends to show, is that he received all the proceeds from the sale of Mrs. Cross' property, both her own and that of her husband's estate. There is very little testimony, outside of his own, to show what he did with these funds. If his testimony as to how he expended this money is to be believed, and it was expended with the consent and sanction of Mrs. Cross, it cannot be said that he fraudulently converted it to his own use. The verdict of the jury was

that he was guilty of embezzling property of the value of $49,960. No evidence was offered in behalf of the People tending to support the averments of the fifth and sixth counts of the indictment. On cross-examination of plaintiff in error it appeared that a check for $49,950 was given to him December 29, 1910, by the St. Louis Fire Insurance Company for $55,500 worth of bonds of the electric railway, he being then president of each of said corporations. Plaintiff in error testified that he gave back his check to said fire insurance company for $50,000, and that this transfer was merely a matter of book-keeping in settling up the accounts of the St. Louis Fire Insurance Company when that company took over the Century Fire Insurance Company of Des Moines, Iowa; that it had nothing to do with Mrs. Cross' affairs; that it was his (plaintiff in error's) own personal affair. It is manifest from a study of the record before us that the jury returned their verdict under the sixth count of the indictment on account of the giving of this check for $49,950, on the ground that that was the consideration for the sale of the $55,500 worth of the electric railway bonds to the St. Louis Fire Insurance Company. The $10 difference between this check and the sum mentioned in the verdict must have been a mistake made by the jury in fixing the amount. There is no other single transaction shown in the record that would make this difference between the $49,960 and $49,950. It is not at all probable that the jury arrived at this value of the property by adding together a large number of the smaller sums that came into his possession. It seems to be conceded by counsel for the People that the jury based their verdict on the transaction concerning this check for $49,950 on the theory that plaintiff in error admitted that he sold $55,500 of the electric railway bonds to the St. Louis Fire Insurance Company, for which he received said company's check, payable to himself, for $49,950, and that he converted this check to his own use. His own evidence is

not clear on this point. He started to explain in answer to some of the questions during the cross-examination, but counsel stopped him and told him to answer yes or no. On re-direct examination he was not asked to explain this transaction more fully. There is no testimony in the record, outside of his, that touches in the slightest manner on this transaction. He did not state who owned this $55,500 worth of bonds of the electric railway at the time he received this check, and there is no testimony in the record from which any satisfactory conclusion could be drawn as to who was the owner. This sixth count charges him with converting $50,000 of the first mortgage bonds of this electric railway company. In plaintiff in error's testimony as to this transaction he was not asked and did not state as to whether this $55,500 worth of bonds were first mortgage bonds or not. They were simply denominated "bonds" of that company. Mere proof of the receipt of funds and failure to account therefor is not sufficient, in itself, to show embezzlement by an agent or servant. There must be other evidence of the conversion. (1 McClain on Crim. Law, sec. 639; *People* v. *Wyman,* 102 Cal. 552.) Plaintiff in error testified positively that at the time he took charge of the business for Mrs. Cross the St. Louis Fire Insurance Company was in excellent financial condition and that it was doing a fine business. Counsel for the State do not point out any evidence in the record, and we have found none, that in any way contradicts his testimony as to the financial condition of said company at that time.

Counsel for plaintiff in error insist that the record does not present any satisfactory proof that he converted to his own use any of the property that came into his hands by reason of his appointment by Mrs. Cross as her attorney in fact, to manage and control her own property and that of her husband's estate; that the only basis for this conviction is that he received the property and neglected to make a full statement of account therefor to his principal

before he was indicted, but that while on the stand testi-
fying in this case he did make a full and complete state-
ment of account, showing the money received and how it
had been disbursed; that he stated repeatedly while on the
stand that he had not converted any of the property, moneys
or funds of Mrs. Cross to his own use, and that the strong-
est inference that can be drawn from his testimony in the
case is that he did not show satisfactorily what he did with
the check of the St. Louis Fire Insurance Company for
$49,950. Counsel for the People seem to assume in their
briefs that on this record the conviction was justified be-
cause it was clearly shown that plaintiff in error had re-
ceived all this property and turned it into money and had
not accounted for its disbursement. They have not, how-
ever, attempted to point out in their briefs wherein plain-
tiff in error made false statements on the witness stand
as to the receipts or disbursements of the money, and so
far as we can ascertain there is no evidence in the record
that contradicted him in any way as to the disposition he
made of the proceeds of such property.

Counsel for plaintiff in error argue that the business af-
fairs of Andrew W. Cross at his death were so badly in-
volved and the attempt to construct the electric railway by
him and his associates was so serious a financial blunder
that it was impossible for anyone to protect his estate
and continue the construction of the road in a successful
business manner, and that plaintiff in error, in attempting
to do so, attempted the impossible, and not only was com-
pelled to put in all the proceeds from Mr. and Mrs. Cross'·
property, but also, under the burden of the responsibility,
became a physical wreck; that most of his acts were done
with Mrs. Cross' consent and approval, and that he is to
be pitied and sympathized with, rather than punished, for
having honestly attempted the impossible. Counsel for the
People, on the other hand, apparently argue that plaintiff
in error not only used bad business judgment in attempt-

ing to construct this road and manage the business affairs committed to him under the power of attorney, but that on account of his own financial embarrassment he used a large amount of funds that came into his hands under said power of attorney to help out the St. Louis Fire Insurance Company, of which he was president, thus, in effect, converting the same to his own use without Mrs. Cross' sanction or approval. Which view is correct need not in this case be decided. Even if the theory of the State be correct as to plaintiff in error's connection with the management and disposition of the property in question, he cannot be convicted under this indictment without proof, beyond a reasonable doubt, that he fraudulently converted to his own use, as charged in the indictment, some of the money or property thus turned over to him. The mere depositing of the proceeds of the notes, bonds and stocks that thus came into his hands to his own private account does not prove that he was guilty of embezzlement or fraudulent conversion. The record shows, beyond doubt, that everyone connected with any of his transactions mentioned in the testimony knew that he was acting under a power of attorney from Mrs. Cross and that she gave him full authority to act for her. Beyond question, according to her own testimony, Mrs. Cross herself knew that he was using in some manner the proceeds obtained from selling her own property as well as from selling the property of her husband's estate, and she concedes that he repeatedly talked with her about the construction of the railroad and what he was doing in connection therewith but that she did not fully understand it. The only point upon which she disagrees with him is as to whether she sanctioned the use of any of the proceeds of the property committed to his care for the purchase of stock in the St. Louis Fire Insurance Company. Manifestly, however, as conceded by counsel for the People, plaintiff in error was not found guilty in this case because he had thus invested in said stock. He was convicted be-

cause of the $49,950 check of the St. Louis Fire Insurance
Company, drawn to him personally. He was not asked by
counsel on either side as to what he did with this check.
It is not shown, as we have stated before, that it was given
in payment of bonds belonging to Mrs. Cross. No attempt
was made to show that he embezzled or converted to his
own use this check or its proceeds. Even if it be conceded
that the $55,500 of bonds of the electric railway company
in this transaction were her property or belonged to her
as executrix, she did not deny the authority of plaintiff in
error to sell them, and there is nothing in her testimony to
show that these bonds were sold without her consent. In-
deed, she did not in any way refer in her testimony to the
$55,500 worth of bonds. He cannot be convicted in this
proceeding for embezzling the proceeds of bonds, as neither
in the indictment nor the bill of particulars is he charged
with that offense. On an indictment for embezzling bonds
a conviction cannot be had merely on proof of the em-
bezzlement of proceeds derived from sale of the bonds.
*Goodhue* v. *People,* 94 Ill. 37; *Lory* v. *People,* 229 id.
268; *People* v. *Cronkrite,* 266 id. 438.

The only basis for the conviction of plaintiff in error,
under the sixth count, for the conversion of these bonds
is his own testimony. He denied that this transaction had
anything to do with Mrs. Cross' business affairs, and there
is no direct testimony in the record contradicting him on
this point. The general rule undoubtedly is that positive
testimony of a witness, uncontradicted and unimpeached,—
either by positive testimony or by circumstantial evidence,
either intrinsic or extrinsic,—cannot be disregarded, but
must control the decision of a court or jury. (*Quock Ting*
v. *United States,* 140 U. S. 417.) It is true that the rule
admits of exceptions. There may be such an inherent im-
probability in the statements of a witness as to induce the
court or jury to disregard his evidence, even in the ab-
sence of any direct conflicting testimony. He may be con-

tradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his account of particular transactions or of his own conduct as to discredit his whole story. (*Podolski* v. *Stone,* 186 Ill. 540; *Kennard* v. *Curran,* 239 id. 122.) But neither court nor jury can willfully or through mere caprice disregard the testimony of an unimpeached witness. (*Larson* v. *Glos,* 235 Ill. 584.) Waiving the question as to whether, in the state of the record in this case, this judgment should be reversed because of the mistake of $10 made in the amount of the check which must have served as a basis for the jury's verdict, we cannot see how the evidence justified plaintiff in error's conviction even for the proper amount of the check. His testimony as to this check is, as we have seen, uncontradicted by any other testimony in the record. It is not so inherently improbable or so contrary to any facts he states as to justify the court or jury in disregarding his testimony on that question. Furthermore, construing his testimony most strongly against him, as argued by counsel for the State, there is no evidence upon which to base the conclusion that these bonds were the property of Mrs. Cross, either personally or as executrix.

Counsel for plaintiff in error insist that he was wrongly indicted in Jersey county, in this State; that he was living in St. Louis, Missouri, at the time this power of attorney was executed and did most of the business under that power while he resided in Missouri, and that therefore, if he was guilty at all, he must be tried in Missouri; that it was not his duty to make an accounting to Mrs. Cross in this State. The law is that the venue of an indictment charging an embezzlement consisting of a failure to account should be laid in the county and State where the accused was under an obligation to account. (*Kossakowski* v. *People,* 177 Ill. 563.) While it is true that the power of attorney did not state that it was plaintiff in error's duty

to account to his principal at her home in Jerseyville, and there is no direct testimony of an agreement to that effect, the method of carrying on the business between them, as found in this record, is of such character as to justify the conclusion that both parties interested thought it was his duty to account to her at her home. Much of the business was transacted in Jerseyville, and, indeed, at the time he turned over to her his appointment as attorney in fact and dropped all connection with her business affairs he had been making his home for several months, as he himself testified, at Mrs. Cross' house, and it was his clear duty to account to her there. We do not think the trial court erred in ruling that the venue was properly laid.

Counsel for plaintiff in error further insist that no demand was made for an accounting from plaintiff in error by Mrs. Cross or anyone acting for her. Unless the statute under which an indictment for embezzlement is framed requires a demand for an accounting as a constituent element of the offense a demand is not necessary. (10 Am. & Eng. Ency. of Law,—2d ed.—995; 2 Bishop's New Crim. Law, sec. 373; *State* v. *Porter,* 26 Mo. 201; *Commonwealth* v. *Tuckerman,* 76 Mass. 173; *People* v. *Gordon,* 133 Cal. 328; *State* v. *New,* 22 Minn. 76; *State* v. *Tompkins,* 32 La. Ann. 620; see, also, *Kossakowski* v. *People, supra.*) This indictment is based upon two sections of the Criminal Code, namely, sections 74 and 75. (Hurd's Stat. 1913, p. 820.) Neither of these sections requires a demand.

Counsel further insist that the trial court erred in refusing to permit the introduction of certain receipts offered by plaintiff in error while on the stand. At the time they were offered it was contended by counsel that such receipts corroborated plaintiff in error as to how he had paid out money for many of the items of disbursements. As between principal and agent, receipts given to the agent for payments made by him in his principal's business are competent evidence of the amounts paid. (*Ballance* v. *Frisby,*

2 Scam. 63; *People* v. *Gerold,* 265 Ill. 448; *Given* v. *Gould,* 39 Me. 410; *Sherman* v. *Crosby,* 11 Johns. 70.) A written receipt, if properly identified, is *prima facie* evidence of the truth of the recitals which it contains. (Jones on Evidence,—2d ed.—sec. 492.) As we understand the offer of proof as to these receipts the court should have admitted them in evidence.

Section 74 of division 1 of the Criminal Code (Hurd's Stat. 1913, p. 820,) which is one of the sections on which this indictment was based, provides that a person is guilty thereunder who "embezzles or fraudulently converts to his own use, secretes with intent to embezzle or fraudulently convert to his own use," moneys, goods or property, etc. Section 75 also specifies the actual embezzlement or fraudulent conversion and the taking or secreting with intent so to do. The first instruction given on behalf of the People told the jury that "whoever embezzles or fraudulently converts to his own use, or secretes with intent to embezzle or fraudulently convert to his own use, money, goods or property delivered to him," etc., shall be deemed guilty of larceny. The second instruction contained practically the same wording. There was no evidence in the record that tended to support the charge that plaintiff in error had secreted with intent to embezzle or fraudulently convert to his own use and no count in the indictment to that effect. The only evidence that tended in the slightest degree to show his guilt was that he had embezzled or fraudulently converted to his own use. Under the reasoning of this court in *Goodhue* v. *People, supra,* it was error to give these instructions. Furthermore, we think the instructions were improper, under the holdings of this court, because they contained legal propositions inconsistent with and not founded upon the facts in the case. *Hayner* v. *People,* 213 Ill. 142; *Johnson* v. *People,* 197 id. 48.

Counsel further complain of certain instructions of the People, because they told the jury, in terms, that plaintiff

269 – 18

in error could be found guilty if they believed, from the evidence, that he had converted any money or property of Mrs. Cross, ignoring entirely any reference to the money and property specified in the bill of particulars. These instructions were misleading and erroneous in that regard. When a bill of particulars has been filed in a case the instructions should confine the consideration of the jury to evidence supporting the charges stated in the bill of particulars. *McDonald* v. *People*, 126 Ill. 150; *Waidner* v. *Pauly*, 141 id. 142; *Township of Lovington* v. *Adkins*, 232 id. 510.

Counsel further argue that certain instructions given for the People were erroneous, in that they told the jury that it was their duty to decide the case "solely on the evidence and the instructions of the court," etc.; that the jury are the judges not only of the facts but of the law in criminal cases, in this State. Our views on this point have been repeatedly stated by this court. (*Mullinix* v. *People*, 76 Ill. 211; *Davison* v. *People*, 90 id. 221; *Wohlford* v. *People*, 148 id. 296; *People* v. *Campbell*, 234 id. 391.) While these last instructions perhaps were not carefully worded, we do not think they were so misleading as to justify a reversal.

Other errors are urged as to the wording of certain instructions, and while possibly some of the criticisms of counsel for plaintiff in error may be justified, we deem none of the other points raised of sufficient importance to require our consideration.

The judgment of the circuit court will be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*