(No. 19061. 
JOHN R. GRAY, Defendant in Error, *vs.* NATHAN SOLOMON *et al.* Plaintiffs in Error.

*Opinion filed February 21, 1930.*

JOHN B. KING, and LEO G. HANA, for plaintiffs in error.

LEVINSON, BECKER, FRANK, GLENN & BARNES, and CLARENCE N. BOORD, (OTIS F. GLENN, ARTHUR C. BACHRACH, JOHN J. ABT, and MAX SWIREN, of counsel,) for defendant in error.

Per CURIAM: The superior court entered a decree of specific performance of a contract of sale of lots 14 and 16, in block 16, in a certain subdivision in Chicago, and the defendants, who were the vendors, have sued out a writ of error.

The contract, which was dated April 30, 1927, was a contract of Nathan Solomon and Minnie S. Solomon to sell to John R. Gray the lots in question for $9000, which Gray agreed to pay. It was executed on May 2, 1927, and at that time Gray paid $500 earnest money to the Chicago Title and Trust Company, with which the money and contract were placed in escrow until performance of the contract. Gray was ready, willing and able to perform and on June 15 tendered performance on his part and demanded performance of the vendors. On their refusal he filed his bill on June 16 to compel a compliance with the contract.

The vendors were required by their contract to deliver to Gray, within fifteen days, a report by the Chicago Title and Trust Company in regard to the title, and on May 20, which was five days late, they did deliver such report, which stated that the title of the vendors was subject not only to the conditions mentioned in the contract, but also to the rights of Clara E. Howard under an unrecorded contract for the purchase of the lots dated January 5, 1927, set forth in an affidavit of Mrs. Howard recorded May 14, 1927. The bill alleged that the contract referred to in the affidavit of Mrs. Howard in fact was not entered into on January 5, 1927, but was entered into some time after April 30, 1927; that about April 30 Mrs. Howard learned of the agreement with Gray, and a few days after procured the Solomons to enter into a pretended contract for the purchase of the lots, which is the contract referred to in the affidavit of Mrs. Howard which was recorded on May 14, 1927; that the contract, although made after April 30, was fraudulently antedated to make it appear that it was entered into on January 5; that the contract

was entered into in bad faith and is a sham, fraud and pretense, not supported by any consideration, not intended to transfer or vest in Mrs. Howard any right or interest in the premises, but was entered into by the Solomons to make it appear that they were disabled from conveying a good title to Gray, to the end that they might by fraud and deceit make it appear that the contract was genuine and *bona fide* and that they might induce Gray to relinquish his rights under his agreement with the Solomons. The prayer of the bill was that the contract between the Solomons and Mrs. Howard be declared fraudulent and of no binding force; that it be set aside and canceled; that the affidavit of Mrs. Howard be declared false, fraudulent and void, a cloud upon the title to the lots and Gray's interest therein, and be set aside, canceled and stricken from the records as a cloud on the title, and that a specific performance of the contract between the Solomons and Gray be decreed.

The answer of Clara E. Howard admitted the title of the Solomons; stated that she had no knowledge of the contract between complainant and the Solomons, but averred that the lots are subject to her rights under the contract dated January 5, 1927, set forth in her affidavit; that she is, and has been since January 5, 1927, ready, willing and able to comply with the terms of her contract, but the Solomons have refused, and still refuse, to comply with the terms of their agreement; denies that her contract was entered into after April 30 and avers that it was entered into on the date it bears. The answer denied all charges of fraud and denied that the contract was entered into to make it appear that the Solomons were disabled from conveying a good title, as alleged in the bill. The Solomons answered, denying that the Howard contract was entered into after April 30, that it was antedated or entered into in bad faith or for the purpose of making it appear that they were unable to convey a good title, and averring that it was entered into on the date it bears, January 5. The

cause was heard by the chancellor upon the evidence taken in open court.

The contract between Gray and the Solomons for the purchase of the latter's lot was negotiated on behalf of Gray by Chandler & Montague, real estate brokers, through Carl L. Kingsbury, a salesman employed by the brokers. Gray was informed by Montague that the Sears-Roebuck Company was going to build a retail store about a block and a half from the Solomon lots. The building was afterward constructed. Gray never saw the lots until after the purchase but knew their location from a plat and had also knowledge of the general territory where they were located. Counsel for the plaintiffs in error claim in their brief that Kingsbury persuaded Mrs. Solomon to list the lots with him for sale, that he represented that they were adjacent to a city dumping ground, that the neighborhood was badly zoned and that she was lucky to get rid of them at all, but that he failed to tell her that a building was to be erected by the Sears-Roebuck Company near these lots, that his company was buying everything in that vicinity that was for sale and that there was a good market for her lots, and the greater part of their brief is occupied with a discussion of the propositions that the right to a specific performance is not absolute but rests in the discretion of the court, and equity will not specifically enforce a contract which the complainant has secured by material misrepresentation, that unfair concealment may have the same effect as affirmative misrepresentation as a defense against a bill for specific performance, and that where an agent employed to sell property sells the same to a purchaser for whom he is acting as agent in effecting the purchase, the seller in equity may avoid the contract. These principles have no application to the issues in this case. There were no allegations of fraud, misrepresentation or dual agency in the answers, which relied solely on the contract of January 5, 1927, between Mrs. Howard and the Solomons as making perform-

ance by the Solomons of their contract of April 30 to convey a merchantable title to Gray impossible. It is true that the answer of the Solomons in its conclusion states that the "complainant is not entitled to any relief by reason of the fact that said complainant and his agent fraudulently procured said contract from these defendants and deny that said complainant was the owner of said contract." This is not an issuable charge of fraud. It is a mere general allegation stating no fact upon which issue can be taken. The single issue presented by the bill and answers is whether the contract of the Solomons with Mrs. Howard to sell the lots to her was entered into in good faith before their contract with Gray to sell the lots to him, and it is with reference to this issue, alone, that the evidence can be considered.

Mrs. Solomon and Mrs. Howard testified the Howard contract was executed the day it bears date, January 5. The attorney for Mrs. Howard, after withdrawing from the case during the trial, testified that he saw the contract in January before the Gray contract was executed. The first knowledge defendant in error had of the Howard contract was about May 20, when the Chicago Title and Trust Company made its report on the Solomon title. The report disclosed the title was subject to an unrecorded contract of Mrs. Howard dated January 5, as set forth in her affidavit, which was recorded May 14, 1927. There was no testimony on behalf of defendant in error that the contract which was later recorded was executed after it bears date. As said by the court in *Schumacher* v. *Bell,* 164 Ill. 181, transactions tainted with fraud for the purpose of defrauding others are not susceptible of the same direct proof as other facts, and the wise policy of the law provides that they may be shown fraudulent by proof of circumstances from the existence of which fraud is presumed. The court in that case said: "While it is an established rule of law that fraud is never presumed but must be proven by the party alleging it, yet such proof need not necessarily con-

sist of direct evidence. It may be shown by proof of attending facts and circumstances which raise the inference of fraud." (Citing cases.)

The Howard contract stated that $250 earnest money was paid to the Solomons. Mrs. Solomon admitted that no money was paid at the time but said Mrs. Howard delivered to her two diamond rings valued at $300. Mrs. Solomon did not display the rings to any of her relatives at any time. She stated her husband saw and signed the contract with Mrs. Howard. The record shows Solomon was not called to testify in this case, and neither was the stenographer of Mrs. Howard who prepared the contract between the parties, and no excuse is given for failing to call them as witnesses. Mrs. Howard was a licensed real estate broker of several years' experience. No receipt appears to have been taken by Mrs. Howard for the diamond rings. The Howard contract required the Solomons to procure an abstract of title or guaranty policy within fifteen days. It is stipulated that neither the Solomons nor Mrs. Howard ordered from the Chicago Title and Trust Company a letter of opinion or a guaranty policy or abstract of title in respect to the property. Mrs. Solomon testified she consulted no lawyer about the Howard contract, although she had legal advice before she closed the Gray contract, and when she executed the Gray contract she did not give her attorney any information that she had a contract to sell the same property to Mrs. Howard. When Gray discovered the Howard affidavit his counsel sent letters to the Solomons and to their attorneys asking what the Solomons intended to do. No replies were received to any of those letters. Gray also wrote Mrs. Howard demanding an explanation of her position, but she did not reply to the letter. It would seem an unnatural thing for Mrs. Solomon to do to make the Gray contract after she had made the Howard contract, for that would be the commission of a crime under our statute. In answer to

a question asked by counsel for Gray of Mrs. Solomon why she made a contract to sell the lots to Gray after having contracted to sell them to Mrs. Howard, Mrs. Solomon did not answer the question directly but entered upon a lengthy explanation as to her alleged reasons, which amount to no reason at all. Mrs. Solomon admitted that the Gray contract was a more desirable contract than the Howard contract and would net her more money.

Defendant in error contends that the circumstantial evidence referred to discredits the testimony of plaintiffs in error and fairly shows facts and circumstances authorizing the conclusion that the Howard contract was a sham and a fraud. This court has previously held that fraud may be inferred from facts and circumstances from which inferences are deducible, based upon the probabilities of human conduct. In *Podolski* v. *Stone,* 186 Ill. 540, the chain of circumstantial evidence is similar to the showing made in this case. That was a case by a judgment creditor against an assignee for the benefit of creditors to subject property of the debtor in the hands of the assignee to the lien of the judgment. The defense was that the judgment was collusive and that the note upon which it was founded was given to a false creditor. The note on which the judgment was taken was given four days before recording the assignment, and the day after the note was given the creditor confessed judgment and the execution was placed in the hands of the sheriff two hours before recording the assignment. The judgment creditor testified to the giving of the note for a loan; that the holder of the note secured the money from a safety deposit box; that he knew the maker of the note only socially and had not talked with him for four months following the making of the loan. The judgment debtor did not testify. The assignee introduced evidence of a number of other suspicious circumstances. Counsel for the judgment creditor claimed the positive testimony of his client would not permit the in-

ference of fraud. That contention was overruled in the trial court and the decree was affirmed in this court. In the opinion of that case in this court it was said: "Proof of fraudulent or collusive acts is nearly always difficult. Fraud lurks in the dark. Its ways are devious, often, and at all times intended to be hidden, and if brought to light it must usually be by the means of presumptive or circumstantial evidence,—not presumptions of law but presumptions of fact, which differ from presumptions of law in this essential respect: 'that while those are reduced to fixed rules and constitute a branch of the particular system of jurisprudence to which they belong, these merely natural presumptions are derived wholly and directly from the circumstances of the particular case by means of the common experience of mankind, without the aid or control of any rules of law whatever.' (1 Greenleaf on Evidence, 44.) In this case the court heard the evidence and had the advantage of opportunity of judging of the weight to be given to the testimony of appellant by his actions and demeanor while testifying, as well as of the other witnesses, which we have not, and that finding is entitled to the same force and effect as a verdict of a jury." (Citing cases.)

The decree in this case recites that the cause was heard by the court upon the evidence taken in open court. We do not regard it as necessary to amplify the statement of the opinion in the *Podolski case, supra.* It has always been held that where a decree depended upon the facts and the evidence was heard in open court, the chancellor was in a better position than a reviewing court by reason of his opportunity to observe the witnesses and their demeanor while testifying, and that unless a reviewing court could say the chancellor had palpably decided the case contrary to the evidence his finding would not be disturbed. The evidence of plaintiffs in error was so affected by the facts and circumstances proved to which we have referred that it was a fair case for the court to say whether he would

give full value to their statements or whether he would hold the proof of defendant in error warranted the inference of fraud and sustain the allegations of the bill that the Howard contract was a sham and a fraud. The chancellor determined the credibility of the witnesses, and we do not think we would be justified in saying that he should have believed the witnesses of plaintiffs in error as to the Howard contract being executed before the Gray contract. The proof of defendant in error showed the conduct of plaintiffs in error was inconsistent with the execution of the Howard contract on the day of its date, and we are not disposed to disturb the decree.

The decree is therefore affirmed. *Decree affirmed.*